PULLMAN PALACE CAR Co. *v.* MISSOURI PACIFIC RY. Co. and another.*

(*Circuit Court, E. D. Missouri.* April 25, 1882.)

1. PLEADING—DEMURRER.

A demurrer admits all facts well pleaded, but not conclusions drawn therefrom by the pleader.

2. CORPORATIONS—CONTRACTS.

Where a railroad company made a contract concerning all roads which it then did or might thereafter control, by ownership, lease, or otherwise, and thereafter acquired more than a majority of the stock of B., another railway company, and by voting such stock elected B.'s board of directors; and where certain persons were members of the board of directors of both A. and B., and the same persons were respectively presidents and vice-presidents of both companies: *held*, that A. had not acquired " control " of B. within the meaning of the terms of the contract, and that the word " control," as used in said contract, meant an immediate or executive control exercised by the officers and agents chosen by and acting under the direction of A.'s board of directors.

*Reported by B. F. Rex, Esq., of the St. Louis bar.

*Noble & Orrick,* for plaintiff.

*John C. Brown* and *Thomas J. Portis,* for defendants.

McCRARY, C. J.   This case is before the court upon an application for a preliminary injunction to restrain respondents from violating a certain contract, and it has been fully argued by counsel, both orally and in print.   The facts, so far as we deem it necessary to state them, are as follows:   On the 8th of May, 1877, a contract in writing was entered into between the complainant and the respondent the Missouri Pacific Railway Company, which gave complainant the exclusive right for a term of 15 years to furnish to the railway company drawing-room and sleeping cars for use upon its railroad, and bound the company, upon certain terms and conditions, to haul said drawing-room and sleeping cars over its line of railroad.

The provisions of this contract now to be considered are those by which it was provided that it should include not only the railway then controlled by the Missouri Pacific Railway Company, but also by all roads said railway company might thereafter control by ownership, lease, or otherwise.   These provisions are to be found in the seventh and twelfth clauses of the contract, which are as follows:

"*Seventh.* In consideration of the use of the aforesaid cars, the railway company hereby agrees to haul the same on the passenger trains on its own line of road, and on all roads which it now controls, or may hereafter control, by ownership, lease, or otherwise, and also on all passenger trains in which it may, by virtue of contracts or running arrangements with other roads, have the right to use such cars, in such manner as will best accommodate passengers desiring the use of said cars.   And the railway company shall, at its own expense, keep said cars in good running order and repair, including renewals of worn-out parts, and all things appertaining to said cars necessary to keep them in first-class condition."

"*Twelfth.* The railway company hereby agrees that the Pullman Company shall have the exclusive right, for a term of 15 years from the date hereof, to furnish for the use of the railway company drawing-room, parlor, and sleeping cars on all the passenger trains of the railway company, and over its entire line of railway, and on all roads which it controls, or may hereafter control, by ownership, lease, or otherwise, and also on all passenger trains on which it may, by virtue of contracts or running arrangements with other roads, have a right to use such cars, and that it will not contract with any other party to run said class of cars on and over said lines of road during said period of 15 years."

The contention of the complaint, which lies at the foundation of its right to an injunction, is that since the execution of the contract the said Missouri Pacific Railway Company has acquired control of the St. Louis, Iron Mountain & Southern Railway, so as to bring the line of that road within the terms and subject to the operation of the

contract. The facts upon which this claim rests, as they are set forth in the bill, are, in substance, that prior to December, 1880, the Missouri Pacific Railway Company acquired and became the owner of more than a majority of the stock of the St. Louis, Iron Mountain & Southern Railway Company, and that such purchase was made with the intent of controlling the management and administration of the last-named road, and of running the two roads as one line, and in the interest of the Missouri Pacific Railway Company; that the present board of directors of the Iron Mountain Company was elected by the vote of the shares of stock owned by the Missouri Pacific Company; that certain persons, seven in number, are members of the board of directors of both companies, and that the same persons are respectively presidents and vice-presidents of both companies; that by reason of such purchase and ownership of the capital stock of the Iron Mountain Company by the Missouri Pacific Company, the former corporation has, in contemplation of law and effect, passed under the control of the latter, so as to bring the same within the scope and operation of the contract above named.

Respondents demur to the bill, and thus admit the averments therein, so far as they are well pleaded, but not the conclusions drawn by the pleader from the facts stated. The demurrer raises the question whether, upon the facts stated in the bill, the complainant is right in its contention that the Iron Mountain road has passed under the control of the Missouri Pacific Company, within the meaning of the contract.

What are we to understand by the word "control" as employed in the contract? The language is, "all roads which it controls or may hereafter control," which in our judgment means controlled by the corporation. The language does not refer to the ultimate power of control which always lies in the stockholders, and which may be indirectly exercised by them at stated periods by the election of directors. It means the immediate or executive control which is exercised by the officers and agents chosen by and acting under the direction of the board of directors. Every corporation, whether private, public, or *quasi* public, has a constituency behind it to which it is responsible, and by which it may in the end be controlled; but when we speak of a corporation in a contract or a statute we do not refer to this constituency, but to the artificial person which acts only according to its laws and through its agents and officers. Thus a municipal corporation—as, for example, a city, county, or town—is in one sense composed of all the voters of the municipality; but when it is referred to

in a statute or contract, it is always mentioned in its corporative capacity as a single person, having certain specified powers, and not with any reference whatever to the body of electors by whom its officers are chosen, and may from time to time be changed.   A statute providing that a railway company shall be subject to the control of a county or city would not be construed as having contemplated control by the majority of the voters, but by the constituted authorities of such county or city for the time being.   The same rule applies to other corporations; and where a contract contemplates corporate action we must always understand that action by the proper authorities and not action by the stockholders is intended.   It is conceded in this case that the two corporations continue to exist and to act separately, each through his own agents and officers.   There has been no absorption of one by the other.   There are still two sets of officers, two boards of directors, and in fact two complete corporations.   True, it is admitted the same persons are in several instances officers and directors of both companies.   But it is difficult to see how this places one corporation under the control of the other.   If it does, how are we to determine which is the controlling and which the subordinate company?   It may be true that the two companies are acting in harmony, and that the same persons own a majority of the stock of both; but this is something very different from the control of one by the other. It is contended that the owner of the stock, or a majority of it, should be regarded, for the purposes of the contract in question, as the owner of the railway.   But even if this were admitted, it would not avail the complainant.   The contract calls for control, not merely ownership.   The owners of a railway may not control it.   The language of the conract upon this point was, no doubt, carefully chosen, and is several times repeated.   The roads to be brought within the terms of the contract were described as "all roads which the railway company now control, or may hereafter control, by ownership, lease, or otherwise."   There must be control, and it may be by ownership, lease or otherwise, so that the ownership of nearly all the stock is not enough. The court cannot say as a matter of law that this gives the control which the contract calls for.   The stock of a corporation is constantly changing hands.   Before the decree could be executed in this case, the stock of the Iron Mountain Company may pass to other hands.   The stockholders of to-day may not be the stockholders of to-morrow.   Besides the stockholders of these two companies may, for any reason satisfactory to them, consider it for their interest to con-

tinue both corporations in existence, reserving to each all its rights under the law. Their right to do so is clear, and for aught that appears this is precisely what they have done. The purchaser of the majority of the stock of the Iron Mountain Company, although that purchaser was the Missouri Pacific Company, acquired the right to continue the former corporation as a separate and independent body corporate, and the contract cannot compel it to forego that right. Each of these corporations has its own charter or articles of incorporation, its own board of directors and executive officers. They exist under and by virtue of separate and distinct acts of incorporation, and if the Missouri Pacific does not see fit to take the legal control of the Iron Mountain road, the court cannot require it to do so.

MILLER, Circuit Justice, (concurring.) I concur in overruling the motion on an injunction. Let the order be so entered.