[No. 13959.   In Bank. — July 18, 1891.]

## C. G. DORRIS, APPELLANT, *v.* JOHN SULLIVAN, RESPONDENT.

EASEMENT — SERVITUDE UPON DITCH — VERBAL CONTRACT FOR USE OF WATER — IRREVOCABLE LICENSE — STATUTE OF FRAUDS. — When a right of way for a ditch across the land of the grantor is conveyed to a grantee, without further written agreement, a verbal contract for the use of a certain quantity of the water to be taken from the ditch, at a certain price, and used perpetually for irrigating the grantor's land, is within the statute of frauds, and cannot create a servitude or easement upon the ditch property or constitute an irrevocable license, or justify the diversion of the water by the successor in interest of the grantor.

ID. — ACTION FOR DIVERSION OF WATER — EVIDENCE. — In an action for the diversion of water from the ditch, brought by the owner of the ditch property against the successor in interest of the grantor of the right of way, in which the issue to be tried is as to the right to a permanent easement of defendant in the ditch and water right, it is error to admit evidence as to such verbal contract on behalf of the defendant.

ID. — PLEADING — PART PERFORMANCE — SPECIFIC PERFORMANCE — IRREVOCABLE LICENSE. — The defendant in such action cannot avail himself as a defense, at the trial, of the fact that the verbal contract was partly performed by his grantor, if he has failed to plead facts sufficient to entitle him to a specific performance, nor can he avail himself of the defense of an irrevocable license, if no license of any kind has been pleaded.

ID. — FAILURE TO PERFORM — PART PAYMENT OF PURCHASE-MONEY — PART SPECIFIC PERFORMANCE. — The defendant in such action is not entitled to enforce a specific performance of the verbal contract, where it does not appear that the plaintiff was unable to perform the contract on his part, in the absence of proof of a tender of full performance on the part of the defendant, and a request from him of full performance by the plaintiff;

and where it appears that only part of the purchase-money was paid by the grantor of the plaintiff, and no offer or intention appears on the part of the plaintiff or of his grantor to pay the remainder, no part specific performance can be enforced.

APPEAL from a judgment of the Superior Court of Modoc County, and from an order denying a new trial.

The facts are stated in the opinion.

*Spencer & Raker,* and *C. A. Raker,* for Appellant.

*D. W. Jenks,* and *Goodwin & Goodwin,* for Respondent.

VANCLIEF, C. — Action to recover damages for the diversion of water, by the defendant, from plaintiff's water ditch, and to perpetually enjoin the defendant from diverting water from said ditch in the future.

Judgment for defendant, and plaintiff appeals from the judgment, and from an order denying a new trial.

Plaintiff's ditch was completely constructed in 1887, and ran through the west half of the northeast quarter and east half of the northwest quarter of section 7, township 42 north, of range 13 east, Mount Diablo meridian, owned by F. S. Chapman. Before the construction of the ditch, Chapman, on June 1, 1885, by an instrument in writing, granted to plaintiff, "for value received," the right of way for the ditch through this land.

Thereafter, on December 7, 1885, before the ditch was constructed to or upon this land, Chapman conveyed the land and appurtenances to the defendant. On the following day, December 8, 1885, Chapman executed to defendant an instrument in writing, purporting to sell, assign, and convey to defendant all his (Chapman's) "right, title, and interest" in the ditch (describing it as then being constructed by C. G. Dorris), "which interest is the right to have twelve inches of water flow through said ditch to and upon said ranch, and there to be used by me for irrigation and domestic purposes as I may require, and I do hereby authorize the said John Sullivan

[defendant] in his own name to demand, use, and in all proper and legal manner maintain and exercise the said right to the use of said water as it flows through and over said ranch belonging to me."

The ditch was not extended to the Chapman land until 1887.

The answer of the defendant denies that plaintiff owns the right of way through said land; and "denies that defendant at the commencement of this action, or at any time, unlawfully kept or maintained, or either, any cut or flume in said ditch, or either, or threatens or intends to forcibly or unlawfully, or either, keep or maintain any cut in said ditch in the future or at any time, or threatens or intends, or either, to deprive plaintiff of the use or benefit, or either, of said water ditch, or of the water thereof (*except so much as belongs to defendant*), or either, or continuously or permanently, or at all; . . . . denies that defendant has no interest in or right to said water ditch, or either, or that defendant has no right to or interest in the waters of said ditch, or either; denies that defendant has no right to take any portion of the waters flowing therein."

The answer contains nothing, except the foregoing denials and parenthetical statement, indicating that defendant owns any portion of the ditch or is entitled to divert any water therefrom. It does not allude to any right to or interest therein derived from Chapman.

On the trial, after plaintiff had proved a *prima facie* case against him, the defendant offered in evidence the above instrument of December 8, 1885, executed by Chapman to him, purporting to grant and assign all Chapman's right, title, and interest in and to the ditch and to the use of the water flowing therein.

To this, plaintiff's counsel objected, on the grounds that it was not relevant to any issue made by the pleadings, and that it did not appear that Chapman had any title or interest in the ditch or water. The court over-

ruled the objection, and plaintiff's counsel excepted; and the instrument was admitted.

As evidence of Chapman's interest in the ditch and water, defendant offered Chapman's deposition as to an oral agreement between Chapman and plaintiff, under which Chapman claimed whatever right he had to the ditch or water. Plaintiff's counsel objected to the deposition on the grounds, — 1. That the agreement was irrelevant; 2. That the agreement was not in writing; and 3. That it does not relate to the ditch described in the complaint. The court overruled the objections, and plaintiff's counsel excepted. After the deposition was read, plaintiff's counsel moved to strike it out on the grounds last stated; and the court overruled the motion, to which ruling an exception was taken.

So far as it relates to the agreement between Chapman and plaintiff, the deposition is as follows: —

"Q. Did you ever enter into an oral contract with said Dorris for an interest in the waters of the Pitt River ditch? A. I did.

"Q. State, as near as you can, the time when said agreement was made, and as fully as you can, the terms of the same. A. About the month of February, 1885, Mr. Dorris came to my office and stated he wanted to bring in the water of Parker Creek, in a ditch, to use on land situated on North Fork of Pitt River, on the north side of the river. He stated he wanted assistance to carry the water across Pitt River in a flume; I told Dorris that I wanted water to irrigate my ranch, about twenty inches measured under a four-inch pressure, and I asked him how much per inch he would charge me for the same; he (Dorris) stated that he would charge me fifteen dollars per inch; I accepted his offer at that price. Dorris then went to work constructing the flume across Pitt River; hired men to work, etc., and I paid the bills of the hired men, provisions, and lumber, to the extent of $175 or thereabouts. It was distinctly under-

stood between Dorris and myself that any advances I might make in paying for labor and materials in constructing the ditch should be applied by him (Dorris) in payment for my water. As an additional consideration, which I was to pay Dorris for my twenty inches of water, was the right of way across my land for his ditch."

On cross-examination: "Q. State if you ever had any conversation with the plaintiff, C. G. Dorris, with reference to the use of water from Pitt River ditch, for irrigation on the land formerly claimed by you. . . . . If so, state what it was in full, and what you did. A. I did.

"Q. Did you ever have any agreement with said Dorris about having water from said Pitt River ditch for irrigation? If so, was said agreement ever reduced to writing? A. I did. No.

"Q. If you were to have any water from said Pitt River ditch at any time, state upon what conditions you were to have it. What were you to do, if anything, before you could have water to irrigate the land? State in full. A. I was to pay fifteen dollars an inch, measured under a four-inch pressure, to the extent of twenty inches; and also give Dorris right of way across my land for his ditch.

"Q. Now tell what you did to fulfill each and all of those conditions? A. I paid $175, and gave him the right of way across my land.

"Q. Is it not a fact that you refused to have anything to do with the construction of the said ditch, and refused to pay anything towards the completion of such ditch, and used words to this effect, that 'I have had all I want of the business, and do not want any water from the ditch, and do not want anything further to do with it, and do not intend to comply with any agreement in the premises,' to the plaintiff, C. G. Dorris, in the town of Alturas, Modoc County, near the Goose Brewery

building, on or about the first day of June, 1885? A. I did not. No.

"Q. State if you did not have a similar conversation with John A. Free, of the same place, about the same time, and that you told him about the same as above set out as being said to said Dorris. A. No. Free presented an order from Dorris, I think, for hauling lumber. I refused to pay it until I saw Dorris.

" Q. Did you not refuse to pay an order on you from C. G. Dorris, and in favor of said Free, for the reason you had nothing more to do with the matter, and did not intend to go any further in complying with your agreement with said Dorris, with reference to your getting water from said ditch for said land? How much were you to give said Dorris for water from said ditch to irrigate said land? State in full. A. No. I was to give fifteen dollars per inch to the extent of twenty inches, and right of way across my land.

"Q. How much did you pay him? and why did you not pay him the agreed price? State in full. A. I paid him about $175. He (Dorris) failed to get the water across the river, and I did not propose to advance the balance until he performed his part.

"Q. From what stream did the water come that was to be turned into said Pitt River ditch? A. Parker Creek.

" Q. What disposition, if any, did you make of said land, and to whom, and when? A. I sold to John Sullivan, in February, 1886.

"Q. Had said Pitt River ditch been completed when you disposed of said land to John Sullivan? If so, how long before? A. It had not.

" Q. Did you ever turn any water from said ditch on the said land at any time? If yes, how much? A. No.

"Q. Had there ever been any water turned in said ditch when you disposed of said land to John Sullivan? A. No.

"Q. How much water was you to get, and what to pay for it, if anything? How much did you pay? State why you did not pay the full amount agreed upon between you and Dorris, if there was any such agreement. A. Dorris never performed his part of the contract. I was to get twenty inches of water at fifteen dollars an inch. I paid about $175. Dorris failed to perform his part of the contract.

"Q. Did not the plaintiff, Dorris, come to you while you lived in Alturas, and about the last of May or the first of June, 1885, and request you to enter into writings with reference to your getting water to use from said Pitt River for said land, and you refused to sign any writing, and then declared you desired to have noth ng further to do with the ditch and use of water on said land, and that you were through? A. No.

"Q. State whether you were not owing said Dorris, at that time, something over three hundred dollars, on your verbal agreement with him, with reference to getting water for said land, and that you failed to pay any of that amount for the reason that you were not going to comply with the agreement, if any. A. I did not owe Dorris anything until such time as he might furnish the water to me. I advanced about $175 to Dorris. The facts are stated in the foregoing answer."

The defendant, among other things, testified: "The reason I did n't get this deed of water the same time I got the deed to land was, that Chapman was trying to get a settlement with Dorris that day, and I did n't get it. Chapman said must have settlement with Dorris that day, and did n't get it. Chapman told me when he gave me the deed to land that he would have to have a settlement with Dorris to find out about the water, and the same before I got the deed. I can't say whether Chapman ever had any settlement with Dorris before he gave me the deeds or not; both deeds had none that I knew of."

Conceding that the testimony of Chapman was suffi-

ciently definite to prove even a verbal contract, such contract must be construed to be a contract for twenty inches of water, to be taken from plaintiff's ditch, and used by Chapman for irrigating his ranch, perpetually, or as long as water should be conveyed through the ditch. Such a contract, if in writing, would have created a servitude upon or an easement in plaintiff's ditch property. (Civ. Code, sec. 801, and by analogy, sec. 552; Washburn on Easements and Servitudes, 379.) But such servitude or easement upon plaintiff's real property could not have been granted or created by a verbal contract.

It is claimed, however, that as the verbal contract was partly performed by Chapman, he was entitled to enforce a specific performance thereof.

In the first place, the defendant could not avail himself of this defense at the trial, without having affirmatively pleaded facts sufficient to entitle him to a specific performance, which he failed to do. (*Arguello* v. *Bours,* 67 Cal. 450; *Kentfield* v. *Hayes,* 57 Cal. 411; *Miller* v. *Fulton,* 47 Cal. 147.)

In the second place, admitting the testimony of Chapman and defendant to be true, it does not prove facts sufficient to entitle defendant to a specific performance of any contract, even though the facts thus proved had been pleaded. The verbal contract was for twenty inches of water, at fifteen dollars per inch, amounting to three hundred dollars. Chapman testified that he paid only *about* $175, and then refused to pay more because plaintiff had failed to perform his part of the contract, — failed to build the flume to convey the water from Parker Creek across Pitt River, according to his first project and the understanding when the contract was made; but as plaintiff afterwards constructed a ditch conveying water from Pitt River to and across his land, Chapman claimed an interest in the ditch and water in proportion to what he had paid, and conveyed this interest

to defendant. But it appears by the testimony of the defendant, which must be taken as absolutely true against him, that when Chapman conveyed the land he understood that he could not grant or assign any right to the water without a settlement with plaintiff; and defendant was never informed of any such settlement, nor was there any evidence of such settlement; but on the contrary, plaintiff testified that no such settlement was ever made. There is no evidence that Chapman or the defendant ever offered or intended to pay the balance of the purchase-money. (*Frixen* v. *Castro*, 58 Cal. 442.) Nor does the evidence show any legal assignment of Chapman's alleged contract with plaintiff to the defendant. The instrument of December 8, 1885, only purports to convey Chapman's right and interest in the ditch, entitling him to twelve inches of water, without alluding to any contract by virtue of which he obtained or claimed such interest in the ditch or such right to the water. By virtue of that instrument the defendant claims an absolute legal right and title to the water which he has taken, and intends to take from plaintiff's ditch in the future, and not a mere equitable right by virtue of an equitable assignment of Chapman's contract for the water. Since it does not appear that plaintiff is not able fully to perform the contract on his part, the defendant is not entitled to enforce a specific *part* performance by the plaintiff. In order to enforce specific performance at all, the defendant should have tendered full performance on his part, and asked full performance by the plaintiff, unless he made it appear that plaintiff was unable to perform some part of his contract.

It is suggested by respondent's counsel that the contract between plaintiff and Chapman may be regarded as an irrevocable license to Chapman to divert from plaintiff's ditch the quantity of water claimed, which, though granting no interest in the ditch or water flowing

in it, by reason of the statute of frauds, would yet be a defense to the alleged trespass of cutting the ditch and diverting water therefrom.

In answer to this, for the mere purpose of disposing of this appeal, it is only necessary to say that no license of any kind has been pleaded. (*Alford* v. *Barnum*, 45 Cal. 483.) But as the cause must be remanded for a new trial, it is proper to say that this action is more than a mere action to recover damages for a past trespass. The complaint alleges not only that the defendant broke and cut the bank of the ditch, and put a box or flume therein, through which he diverted water from the ditch, and has forcibly maintained said cut and flume up to the commencement of the action, but further alleges " that said defendant threatens and intends to so forcibly maintain and keep said cut and flume in said ditch in the future, and thereby to deprive plaintiff of the use and benefit of said water ditch and of the waters thereof, continuously and permanently, in future," etc. The prayer of the complaint is, that defendant be perpetually enjoined from these threatened and intended future acts.

As to this quoted averment of the complaint, the answer simply denies that defendant threatens or intends *unlawfully* to keep or maintain the cut in the ditch in the future, or to deprive the plaintiff of the use or benefit of the ditch or of the water thereof, " *except so much as belongs to defendant*," continuously or permanently, or at all. This is an admission that defendant threatens and intends to keep and maintain the cut and flume in the bank of plaintiff's ditch, and thereby deprive the plaintiff of the use of the ditch and water to an indefinite extent, — "so much as belongs to the defendant."

Under these pleadings, the principal issue to be tried relates to the permanent *right* of the defendant to continue to divert water from plaintiff's ditch in the future, — the *right* to a permanent easement in plaintiff's real

ditch property; and this was the issue actually tried, and to maintain which, on his part, the defendant was permitted to introduce in evidence the verbal contract between Chapman and the plaintiff. To admit a verbal contract, under the guise and name of a license, to prove a permanent easement in or servitude upon real property, would be to evade and defeat the statute of frauds. (Brown on Frauds, secs. 22–30, 133.)

I think the trial court erred in admitting the deposition of Chapman, as to the verbal contract between him and plaintiff, and that for this error the judgment and order should be reversed and a new trial granted.

FOOTE, C., and FITZGERALD, C., concurred.

The COURT. — For the reasons given in the foregoing opinion, the judgment and order are reversed and a new trial granted.