## NEVADA CO. v. FARNSWORTH.

(Circuit Court, D. Utah. September 12, 1898.)

### No. 276.

1. ATTACHMENT—NATURE OF ACTION—IMPLIED CONTRACT.
   The statute of Utah, permitting an attachment in an action on a judgment or upon a contract, express or implied, is to be construed as including contracts implied in law as well as in fact, and an attachment will lie in any action for a breach of duty arising out of contract where the plaintiff may, at his election, and does, sue in contract; as in an action by a principal against his agent for money received, based on a failure of the agent to pay over on demand money intrusted to him by the principal to use in making certain payments, and which was converted by the agent.

2. SAME—SUFFICIENCY OF AFFIDAVIT.
   An affidavit in attachment, charging in the language of the statute that the debt was fraudulently contracted, or the obligation fraudulently incurred, is sufficient, without setting out the acts constituting the fraud.

3. MOTION—NOTICE TO COUNSEL—HEARING.
   Where notice of a motion, setting out the grounds thereof, is required to be served on opposing counsel, only the grounds therein stated can be considered on the hearing.

4. ATTACHMENT IN FEDERAL COURT—PLEADING—AMENDMENT TO SUPPLY JURISDICTIONAL AVERMENTS.
   Though a complaint on which a writ of attachment is issued fails to allege facts necessary to give the court jurisdiction, the defect is cured by an amendment, made on the hearing of a motion to discharge the attachment, showing that such facts existed when the complaint was originally filed and the writ issued.

Opinion on Motion to Dissolve Attachment.

C. C. Dey and J. A. Street, for plaintiff.

Barlow, Ferguson, Moyle, Zane & Costigan and J. L. Rawlins, for defendant.

MARSHALL, District Judge. The case made by the complaint is this: The plaintiff intrusted to the defendant, its agent, large sums of money with which to make certain payments. The defendant paid a portion of the money in accordance with the instructions, but retained a large part, and converted the same to his own use. The complaint, however, does not proceed in tort for the conversion, but ex contractu for money had and received to the plaintiff's use. In aid of the action, an attachment was sued out and levied on property of the defendant, who now moves to discharge the same on the following grounds: (1) That the plaintiff's cause of action is not based upon an express or implied contract; (2) that the debt or obligation is not shown to have been fraudulently contracted.

The statutes of Utah only permit of an attachment in an action upon a judgment, or upon a contract, express or implied; and it is urged with much force that, treating the action as in assumpsit, it is based upon a quasi contract, which it is a misnomer to call an implied contract, wanting, as it is, in most of the elements of a true contract. The whole theory of contracts implied in law was originated for the purpose of giving a remedy ex contractu for certain wrongs, and it does not promote clear thinking to embrace in one classification two things so essentially different as an obligation based on the consent of the parties and one imposed by law, from motives of public policy, frequently against the intention of the parties. But, however unscientific such a classification is, simple implied contracts are usually subdivided into contracts implied in fact and contracts implied in law. The first, it is needless to say, is a true contract, the agreement of the parties being inferred from the circumstances; the latter but a duty imposed by law, and treated as a contract for the purposes of a remedy only. This classification of implied contracts makes it difficult to interpret a statute where the term is used. In each case it becomes a question whether the general meaning, or the more limited, if more accurate, meaning, was, by the legislature, intended. This legislative intent must be sought in the particular statute in question, but, in the absence of any light thrown thereon by the language or object of the statute, or of other statutes in pari materia, it must be held, I think, that the legislature intended that meaning which is commonly assigned to the words, even if such definition be less accurate or scientific. In this case it is urged that the statute has mentioned judgments and contracts, express or implied. That the expression of judgments, a species of quasi contracts, shows that the legislature did not intend to include under implied contracts such contracts as are implied in law. In the usual classification of contracts, judgments are classified as contracts of record, and simple contracts are subdivided into express contracts and implied contracts; and I think that it was the memory of this classification which caused the framers of the statute to treat judgments as different from implied

contracts. There is nothing in the object of the statute which warrants the inference that it was intended to discriminate in favor of the wrongdoer. There is a plain reason why attachments were not permitted in actions sounding in damages, for, if allowed in such actions, property of the defendant might be incumbered in an amount altogether out of proportion to the sum finally recovered. But in assumpsit, where the tort is waived, the sum sued for is the benefit unjustly retained by the defendant; not the damage to the plaintiff, usually more uncertain in amount. Keener, Quasi Cont. 160. There is nothing in the wording of the statute which would warrant a holding that the legislature used the term "implied contract" in other than its usual meaning, or that contracts implied in law were not intended to be included. The weight of authority supports this conclusion.

The question was raised in Bank v. Fonda, 65 Mich. 533–536, 32 N. W. 664, 665,—a case similar to this, and under a similar statute,—and Chief Justice Campbell, in giving judgment, said:

"It is sufficient to say that, when the statute gives the remedy in cases of express and implied contract, we have no authority to graft an exception on the statute, and hold that there are differences in implied contracts; and that, where an action of tort will lie, the fact that assumpsit will also lie does not make the case one of contract. This distinction, if attempted, would lead to great confusion. In cases of bailment, there has always been a choice of forms of action between actions on the case and assumpsit, which is itself really an action on the case. Case lies for breach of duty, and assumpsit for breach of promise. A duty certainly arises out of promises; and the law implies a promise out of most duties. Whatever authorizes the implication of a promise authorizes a suit in assumpsit for its breach. That is the essence of the doctrine of implied assumpsit, and any further refinement on this doctrine would lead to no good end. There is no such equity in favor of wrongdoers that exceptions should be created in their favor."

To the same effect are Elwell v. Martin, 32 Vt. 217, and Gould v. Baker (Tex. Civ. App., 1896) 35 S. W. 708. The authorities are collected in 3 Am. & Eng. Enc. Law, 192.

In Fuel Co. v. Tuck, 53 Cal. 304, the defendant agreed to manufacture certain machines for plaintiff, and deliver them within a specified time. A part of the purchase money was advanced to defendant, who failed to complete the machines within the time limited. The plaintiff thereupon sued to recover the money advanced, upon the ground that the consideration upon which it was paid had wholly failed. An attachment was sued out in aid of the action, and defendant sought to have the same discharged, for the reason that the cause of action did not arise upon a contract express or implied. The court said that "the authorities appear to be uniform to the effect that, where a sum of money has been paid upon a consideration which has entirely failed, the law implies a promise to refund it"; and the attachment was sustained.

In Tabor v. Mining Co., 14 Fed. 636, Judge Hallett, in concluding that the Colorado statute did not permit an attachment in a suit for the proceeds of ore converted by defendant,—a result clearly warranted by the course of legislation on the subject in Colorado, as shown in the opinion,—distinguished the case of Fuel Co. v. Tuck by saying that the implied contract in that case "may be assigned to the class of

tacit agreements already mentioned, which, if not expressed in words, are evincible from the acts of the parties, and stand fully within their intention." The case at bar can be similarly distinguished from Tabor v. Mining Co. Wherever a definite duty arises out of a contract or contract relation, a promise to perform that duty may, without violence, be considered as a term of the contract implied in fact. A principle of law attaches it to the contract, and the parties are conclusively presumed to contract with reference to such principle.

In Pollock on Contracts (page 11), in discussing this question, the author says:

"Sometimes, no doubt, it is difficult to draw the line. 'Where a relation exists between two parties which involves the performance of certain duties by one of them, and the payment of reward to him by the other, the law will imply (fictitious contract) or the jury may infer (true contract) a promise by each party to do what is to be done by him.' Morgan v. Ravey (1861) 6 Hurl. & N. 265. It was held in the case cited that an innkeeper promises in this sense to keep his guest's goods safely. The case of a carrier is analogous. So where A. does, at B.'s request, something not apparently illegal or wrongful, but which in fact exposes A. to an action at the suit of a third person, it seems to be, not a proposition of law, but an inference of fact which a jury may reasonably find, that B. must be taken to have promised to indemnify A. Dugdale v. Lovering (1875) L. R. 10 C. P. 196."

In this case the complaint shows an employment of defendant as the plaintiff's agent, a custody by him, in the course of his employment, of the plaintiff's money, and a failure to pay the same to the plaintiff on demand. It may be said that the duty to pay the money arose out of the contract of employment, and the failure so to do was a violation of that contract. Bank v. Fonda, 65 Mich. 533–536, 32 N. W. 664.

As to the second ground on which the motion is based, it appears that in the affidavit the cause of attachment is set out in the language of the statute, but that the facts showing that the debt was fraudulently contracted, or the obligation fraudulently incurred, are not stated. The statement of the cause of attachment in the language of the statute, and without setting out the specific acts of fraud, has been very generally held sufficient. Auerbach v. Hitchcock, 28 Minn. 73, 9 N. W. 79; Sharpless v. Ziegler, 92 Pa. St. 467; Stevens v. Middleton, 26 Hun, 470; Wap. Attachm. §§ 122, 123.

At the hearing several objections to the attachment were urged, which are not stated in the written motion served on plaintiff's counsel. These objections cannot be considered. The object of a notice of a motion setting out the grounds thereof would be defeated if, on the hearing, other grounds could be added. Instead of being an aid in such case, a notice would be but a trap to opposing counsel. One of the objections, however, is claimed to go to the jurisdiction of the court, and it is argued that this question may be raised at any time, and without notice. Yielding to the argument of counsel in this particular, it will be seen that the court had jurisdiction. The complaint, as it stood when the writ was issued, set out that the plaintiff was organized under the laws of New Jersey, and that the defendant was a resident of Utah; but failed to state that defendant was a citizen of Utah. On the hearing of the motion the complaint was

amended without objection to show that at the time of the bringing of the action the defendant was a citizen of Utah. So that the diverse citizenship necessary to the jurisdiction of the court in fact existed, although, in the first instance, it had not been alleged. That this did not avoid the attachment was held by the circuit court of appeals of this circuit in Bowden v. Burnham, 8 C. C. A. 248, 59 Fed. 752. In that case, at page 251, 8 C. C. A., and page 754, 59 Fed., Judge Caldwell, in delivering judgment, said:

"The objection to the jurisdiction of the court is grounded on the fact that the original petition did not disclose that the assignors of the claims which the plaintiffs sued on as assignees were citizens of states other than Kansas, and the further fact that, rejecting these claims, the amount claimed by plaintiffs was less than $2,000. But the court very properly granted the plaintiffs leave to amend their complaint (section 954,· Rev. St. U. S.), and it was amended. Nevertheless, the plaintiff in error asserts that as the complaint, at the time the attachment was issued, did not contain the necessary jurisdictional averments, every step taken in the cause prior to the amendment was void, and that the amendment of the complaint could not impart vitality or validity to anything done before the amendment was made. This contention is wholly untenable. It is every-day practice to allow amendments of the character of those made in this case, and when they are made they have relation to the date of filing of the complaint or the issuance of the writ or process amended. When a complaint is amended, it stands as though it had originally read as amended. The court in fact had jurisdiction of the cause from the beginning, but the complaint did not contain the requisite averments to show it. In other words, the amendment did not create or confer the jurisdiction; it only brought on the record a proper averment of a fact showing its existence from the commencement of the suit."

The motion to discharge the attachment is denied.