[S. F. No. 13567. In Bank.—February 18, 1931.]

SAN FRANCISCO IRON & METAL COMPANY (a Corporation), Appellant, v. NATHAN ABRAHAM, etc., et al., Respondents.

Louis E. Goodman for Appellant.

Bianchi & Hyman for Respondents.

George C. Faulkner and Marcus Lorne Samuels, *Amici Curiae.*

THE COURT.—A hearing in this matter was granted by this court for the purpose of giving further consideration to certain contentions urged by appellant-petitioner as to

the soundness of the conclusion arrived at by the District Court of Appeal. Such investigation leads us to the conclusion that the trial court did not abuse or misuse its power by discharging the attachment and that the appellate court's decision as to the law of the case may well be affirmed. The opinion of Mr. Justice Sturtevant, Division Two, First Appellate District, with the noted correction as to the order of the counts of the complaint, which in no way affects the substance of the opinion, is adopted and approved as a part of our opinion. It follows:

"This is an appeal by the plaintiff from an order made discharging an attachment. On the hearing of the motion the parties introduced in evidence the plaintiff's verified complaint, its affidavit for an attachment, its undertaking, plaintiff's verified amended complaint, defendants' notice of motion to discharge, defendants' affidavit and the affidavit of L. H. Silberman, the vice-president of the plaintiff.

"From the foregoing papers the following facts appear: Prior to November 1, 1926, N. Abraham was the owner of a store and doing business under the name of N. Abraham and Company. On that date Lou H. Silberman and Harry Silberman, as the agents of plaintiff, and N. Abraham formed a partnership and thereafter conducted the business of the store under the name of N. Abraham Mercantile Co. As for the contribution of the new partner or partners, the plaintiff paid into the funds of the copartnership $60,093.91. The new firm continued to transact business until the first day of December, 1927. At that time it was in financial embarrassment and the defendant proposed to give or take. By agreement of the parties, the defendant transferred to the plaintiff all of his interest and the plaintiff assumed all of the obligations of the partnership; but by the terms of the dissolution agreement, no sum of money was stipulated as payable from either party to the other. The plaintiff's complaint is in two counts. The first count specifically pleads a cause of action as for deceit. The second count pleads a cause of action as for moneys had and received. It was stipulated at the trial that both counts are but different methods of pleading one transaction. It nowhere appears that the plaintiff rescinded the partnership contract, offered to rescind it, nor even at this time, offers to place the defendant *in statu quo*.

554

"The foregoing facts show that the plaintiff's grievance is a tort and under our statute it was not entitled to an attachment. (Code Civ. Proc., sec. 537; *Hallidie* v. *Enginger*, 175 Cal. 505, 509 [166 Pac. 1].) Moreover searching the entire record nothing appears showing any contract under which the defendant became indebted to the plaintiff ' . . . upon a contract express or implied for the direct payment of money . . . ' (Code Civ. Proc., sec. 537; *Willett & Burr* v. *Alpert*, 181 Cal. 652, 662 [185 Pac. 976]; *Sturtevant* v. *K. Hovden Co.*, 60 Cal. App. 696, 698 [214 Pac. 244]; *California Packing Corp.* v. *Kato*, 45 Cal. App. 491, 492 [188 Pac. 57].)

"The plaintiff points to the count as for money had and received, asserts that that count sounds in contract, and therefore claims that in any event it was entitled to take out a writ of attachment. In making this claim it is assuming that the court is passing on a demurrer whereas the proceeding before the court is a motion to dissolve an attachment. The question is not what the plaintiff has pleaded but what in truth and in fact is its grievance. The count for moneys had and received was evidence on the issue before the court but no more conclusive than any other item of evidence before the court. The plaintiff's complaint on the hearing of the motion before the court stood as an affidavit (*Jacobs, Malcolm & Burtt* v. *Railway Co.*, 71 Cal. App. 42, 44 [234 Pac. 328]). That is, the hearing on the motion before the court was similar to a hearing on a motion to dissolve the injunction. That the plaintiff's verified pleading stands as an affidavit on a motion to dissolve an injunction, is made clear by the authorities. (*Falkinburg* v. *Lucy*, 35 Cal. 52, 60, 61 [95 Am. Dec. 76]; *Hefflon* v. *Bowers*, 72 Cal. 270–272 [13 Pac. 690]; *Hiller* v. *Collins*, 63 Cal. 235, 237; *Christopher* v. *Condogeorge*, 128 Cal. 581, 585 [61 Pac. 174].) Moreover, by pleading the count in *assumpsit* the plaintiff waived the tort and affirmed the original contract. But, by the terms of that contract the defendant never bound himself to repay to the plaintiff the amount of its expenditures. (*Bechtel* v. *Chase*, 156 Cal. 707, 711, 712 [106 Pac. 81].) Therefore, it was not entitled to a writ of attachment. We think that the trial court was clearly right in making the order dissolving the attachment."

The inadvertence above referred to consists in the reversal of the counts pleaded, naming the third count—the only one which states facts—as the first count, and referring to the first count for money had and received as the second count, disregarding the second count of the complaint based upon an alleged open book account as immaterial to the reasoning of the opinion.

The parties to the contract of copartnership operated under the same as copartners for more than a year after entering into it, and it is respondent's contention that the $60,093.31, which appellant furnished, was his contribution or purchase price for one-half of the partnership business. The payments made by appellant for said one-half interest in said business began November 1, 1926, and were concluded in the month of June, 1927, but no action was commenced prior to February 26, 1929, more than two years after the last payment was made, and then only after appellant, heavily indebted to a named banking corporation, to which it assigned all of its right, title, property and interest in and to the firm of N. Abraham Mercantile Company, and said bank had placed a bookkeeper or overseer, in conjunction with said Abraham, in charge of said copartnership business. It further appears by affidavit, which is not satisfactorily met by counter-affidavit, that Abraham became dissatisfied with the injection of said overseer into the management of the business and that, therefore, a meeting of the agents of said bank and said Abraham was had, at which meeting the latter offered to assume all of the assets of said business, or to surrender his right in and to said copartnership and its properties, provided that said remaining partners would assume the obligations of said copartnership. That, in accordance with the latter offer, said Abraham did set over and assign, without further money consideration, all of his right, title and interest in and to said copartnership to said remaining copartners; that they accepted the same and agreed to assume all the obligations of said copartnership and to regard the copartnership as dissolved, and that said transfer was in full settlement of said copartnership affairs. The complaint upon its face furnishes sufficient justification for the court's action. There is no reasonable theory by which the complaint can be construed other than that the deceit, set forth with much

particularity and detail in the third cause of action, is the gravamen and forms the basis of the causes of action, scantily pleaded in the other two counts.

The rule is thus stated in 2 Ruling Case Law, section 18, page 815: " . . . nor . . . will the courts permit a cause of action sounding in tort to be converted into an action of contract by means of the form of the pleading. The same act or transaction may constitute a cause of action, both in contract and in tort, and a party may have an election to pursue either remedy. In that sense he may be said to waive the tort and sue in contract. But for the purpose of bringing the case within the attachment law a right of action in contract cannot be created upon the theory of waiving the tort that gave rise to the cause.''

The affidavit of said Abraham, which is full and specific in its averments, and which is not satisfactorily rebutted in important respects, further strengthens the contention that the action is in fact, as alleged in the third cause of action, one sounding in tort and not in contract. Where there are other creditors who may be affected by the attachment of property, as there appear to be in the instant case, the right to gain a preference over them by the exercise of the extraordinary writ of attachment, it should satisfactorily appear to the trial court that the attaching party is fairly and strictly within his rights. From the case as presented by the record, we cannot say that the trial judge exceeded or abused his power in dissolving the attachment.

The order is affirmed.