[L. A. No. 14531. In Bank.—October 1, 1934.]

THADDEUS D. McCALL, Petitioner, v. SUPERIOR COURT OF IMPERIAL COUNTY, Respondent.

528

M. W. Conkling for Petitioner.

Harry W. Horton and S. L. McCrory for Respondent.

PRESTON, J.—By this proceeding we are required to redeclare the distinction between an action to secure the beneficial results which arise from a unilateral rescission of a contract already accomplished (rescission *in pais*) and an action in equity to compel a rescission and to secure an award by decree of the benefits resulting therefrom. We are also required to declare whether or not, under the law of attachment (sec. 537 of the Code of Civ. Proc.), a suit for return of the consideration paid upon a contract, after a rescission *in pais* for fraud, is an action upon a contract, express or implied, for the direct payment of money.

In the case of *Harry E. Griffin et ux., Plaintiffs,* v. *Thaddeus D. McCall et al., Defendants,* No. 13573, the Superior Court of the State of California, in and for the County of Imperial,. on February 24, 1933, gave its decree in favor of plaintiffs for a restoration to them by defendants of the consideration paid for the purchase of a tract of real property, a grapefruit grove of 6.12 acres, to wit: the sum of $6,381.40, with interest and costs. This followed a confirmation by said decree of a rescission of the contract, accomplished by plaintiffs on February 1, 1930, in the manner provided by law, which rescission was based upon fraudulent representations on material matters inducing the purchase. As a further provision of its decree, the court enjoined defendants from attempting to further enforce the obligations of plaintiffs found in a promissory note executed by them to defendants, secured by deed of trust upon the real property in suit. A still further provision of the decree purported to re-invest defendants with the title to said real property and to restore to them all other things of value received from them by plaintiffs as part of the transaction.

The original complaint was filed on April 22, 1930. It was cast in three counts. The first count declared upon the fraudulent representations inducing the contract and upon rescission of it on February 1, 1930, as aforesaid,

and set up in detail how the rescission was made, including notice to defendants and a plenary offer to restore. The second count declared upon a failure of consideration in that defendants failed to honor certain covenants respecting the planting, cultivating and caring for said grove of grapefruit trees planted by defendants on said land during the time it was held under lease by them as a part of the original transaction. The third was a common count for money had and received, *indebitatus assumpsit.* The prayer of the complaint was for return of the money paid on account of said purchase, with interest and costs, and for equitable relief in the cancellation of various written instruments, contracts and obligations between the parties as a part of the transaction here in question. The complaint was amended in certain respects and defendants made answer thereto. These pleadings are not in the record before us. It does appear, however, that an appeal has been taken from said decree and lodged in this court.

Upon initiation of said action a writ of attachment for the amount paid on the purchase price of said property was procured upon an affidavit regular in form, setting up the transaction as a contract for the direct payment of money, and said attachment was levied upon certain property of the defendants. Although a dispute exists between the parties as to some of the steps which have been taken in the court below, looking to a discharge of said attachment, the fact remains that it is still in force.

Following said judgment, and perhaps following the appeal therefrom, to wit: on May 18, 1933, one of the above-mentioned defendants, Thaddeus D. McCall, instituted the present proceeding in mandate to compel said superior court to discharge the said attachment. Whether or not this relief should be granted is the ultimate question for our solution here.

The discussion that follows should be construed as a continuation of that found in the case of *Philpott* v. *Superior Court*, L. A. No. 14359 (*ante*, p. 512 [36 Pac. (2d) 635]), this day decided. ■ From that action it is concluded that where a party to an executory contract parts with his money or goods as the result of fraudulent representations as to material elements of the transaction, he has an election of remedies, one of which is to waive the tort, rescind the

contract and sue in *assumpsit,* upon the promise implied by law, for a return of the consideration paid, and where the defrauded party parts with his money or with his goods under such fraudulent inducements and has received nothing of value therefor, he may sue on the common counts of *indebitatus assumpsit* or *quantum valebat* in *assumpsit,* as the case may suggest.

This brings us to inquire whether or not the language of section 537 of the Code of Civil Procedure, allowing attachment " . . . in an action upon a contract, express or implied, for the direct payment of money . . . " embraces within its terms an implied promise supplied by law of the character above described. In other words, there are at least three classes of promises to pay—an express promise to pay, a promise implied from the facts of the case, and a promise implied by law. Does the chapter of said code on attachments allow a writ where the promise is supplied by law?

We have seen that the implied promise supplied by law is *ex contractu* in its nature. (*Philpott* v. *Superior Court, supra.*) With this in mind, we are unable to see any distinction between the three classes of promises so far as said chapter of the code is concerned, or why all are not included in the section allowing attachment. In the case of *Nevada Co.* v. *Farnsworth,* 89 Fed. 164, 165, 166, an early case before the United States Circuit Court, this identical subject is treated as follows:

"The statutes of Utah only permit of an attachment in an action upon a judgment, or upon a contract, express or implied; and it is urged with much force that, treating the action as in *assumpsit,* it is based upon a *quasi*-contract, which it is a misnomer to call an implied contract, wanting, as it is, in most of the elements of a true contract. The whole theory of contracts implied in law was originated for the purpose of giving a remedy *ex contractu* for certain wrongs, and it does not promote clear thinking to embrace in one classification two things so essentially different as an obligation based on the consent of the parties and one imposed by law, from motives of public policy, frequently against the intention of the parties. But, however unscientific such a classification is, simple implied contracts are usually subdivided into contracts implied in fact and con-

tracts implied in law. The first, it is needless to say, is a true contract, the agreement of the parties being inferred from the circumstances; the latter but a duty imposed by law, and treated as a contract for the purposes of a remedy only. This classification of implied contracts makes it difficult to interpret a statute where the term is used. In each case it becomes a question whether the general meaning, or the more limited, if more accurate, meaning, was, by the legislature, intended. This legislative intent must be sought in the particular statute in question, but, in the absence of any light thrown thereon by the language or object of the statute, or of other statutes *in pari materia*, it must be held, I think, that the legislature intended that meaning which is commonly assigned to the words, even if such definition be less accurate or scientific. . . . There is a plain reason why attachments were not permitted in actions sounding in damages, for, if allowed in such actions, property of the defendant might be incumbered in an amount altogether out of proportion to the sum finally recovered. But in *assumpsit*, where the tort is waived, the sum sued for is the benefit unjustly retained by the defendant; not the damage to the plaintiff, usually more uncertain in amount. (Keener, Quasi Cont. 160.) There is nothing in the wording of the statute which would warrant a holding that the legislature used the term 'implied contract' in other than its usual meaning, or that contracts implied in law were not intended to be included. The weight of authority supports this conclusion. (Reviewing authorities.)'' Other cases to the same effect are: *May* v. *Disconto Gesellschaft,* 211 Ill. 310 [71 N. E. 1001]; *Lipscomb* v. *Citizens' Bank,* 66 Kan. 243 [71 Pac. 583]; *Turner* v. *Schwartz,* 140 Md. 465 [117 Atl. 904, 24 A. L. R. 444]; *Farmers' Nat. Bank* v. *Fonda,* 65 Mich. 533 [32 N. W. 664]; *State* v. *Superior Court,* 105 Wash. 676 [178 Pac. 827]; *Western Assur. Co.* v. *Towle,* 65 Wis. 247 [26 N. W. 104].

The above authority was followed in the case of *Aronson & Co.* v. *Pearson,* 199 Cal. 286 [249 Pac. 188, 51 A. L. R. 1380], where it was expressly held that the stockholders' liability, under the constitutional and statutory provisions relating thereto, was an implied contract within the meaning of said section 537 of the Code of Civil Procedure, and the right to a writ of attachment was confirmed. There was

in such case no privity of contract whatsoever. In fact, there is little, if any, difference between the promise implied by law in the case before us, where the transaction was induced by fraud, and a case of total failure of consideration such as *S. C. V. Peat Fuel Co.* v. *Tuck*, 53 Cal. 304; *Mahony* v. *Standard Gas Engine Co.*, 187 Cal 399, 405 [202 Pac. 146]; *Bennett* v. *Superior Court*, 218 Cal. 153 [21 Pac. (2d) 946].

The action in *assumpsit* in such cases is not upon the failure of consideration or upon the fraud practiced but upon the promise or obligation set up by the law to afford the injured party additional relief. Failure of consideration, duress, fraud, or mistake, are elements only in the sense that they furnish a foundation upon which to rest the rescission from which flows the promise or obligation. We therefore conclude that in such cases when suing for the consideration paid, the injured party may, where he has received nothing of value, have the writ of attachment.

But this observation does not dispose of all questions raised by this proceeding. It appears that in asking for injunctive relief, plaintiffs included in their complaint both legal and equitable issues and it might well be held that the equitable issues predominate and that a court of equity, having taken hold of the subject-matter of the litigation, should administer both equitable and legal relief. This however, does not prevent the issuance of an attachment as to so much of the action as discloses a contract, express or implied, for the direct payment of money. The prayer for equitable relief, therefore, has no bearing upon the issuance of an attachment in a proper case. This subject was thoroughly considered in the recent case of *Bennett* v. *Superior Court, supra.* (See, also, *Hallidie* v. *Enginger,* 175 Cal. 505 [166 Pac. 1], *DeLeonis* v. *Etchepare,* 120 Cal. 407 [52 Pac. 718], and *Kohler* v. *Agassiz,* 99 Cal. 9 [33 Pac. 741].)

In *Stanford Hotel Co.* v. *M. Schwind Co.,* 180 Cal. 348 [181 Pac. 780], one of the reasons assigned as ground for discharging the attachment was that it was an action in equity. There the prayer of the complaint was for a temporary restraining order enjoining defendants from selling or otherwise disposing of the property involved in the bill of sale and that the sale be declared void, and that it be decreed that the defendant held the property charged with payment

of plaintiff's claim in the sum of $3,617.60; that the property be sold and for further and proper relief. The court, in discussing whether or not an attachment would lie, said: "If a recovery upon such a contract is the purpose of the suit, so far as the right of attachment is concerned it is immaterial whether the action be regarded as strictly legal or strictly equitable, or partly legal and partly equitable. The subdivision does not in terms prescribe that the action must be one in law, or that it may not be one in equity, or that it may not be one of either law or equity, or of both. Hence it is not necessary in order to uphold the writ of attachment to establish the proposition that the action is either legal or equitable. What must be established is that the action is based upon contract, either express or implied, for the direct payment of money. It is clear that this action addresses itself to both the legal and equitable powers of the court. But that circumstance will not operate to deny the plaintiff a writ of attachment if he is seeking recovery upon the breach of such contract. . . . Consequently, even if such an action may properly be regarded as partially legal and partially equitable, it will make no difference. The plaintiff is nevertheless entitled to a writ of attachment by virtue of the fact that he is suing for a recovery upon the contract which is the gravamen of the action.''

But we have not yet considered what shall be the rule of law where the failure of consideration is only partial or where, in case of fraud, something of value has been received. Is a complaining party, on rescission, entitled to a writ of attachment? We cannot see how such party can meet the test set by section 537 of the Code of Civil Procedure, which, at the times here involved, required the affidavit to state that plaintiff's demand "is not secured by any mortgage or lien upon real or personal property, or any pledge of personal property, or, if originally so secured, such security has, without any act of the plaintiff, or the person to whom the security was given, become valueless. . . .''

For example, if the case is one where plaintiff is the purchaser of personal property, the Civil Code, section 1789, subdivision 5, expressly gives him a lien. And where, as here, the purchase is real estate, whether the right of re-

scission is based upon fraud or partial failure of consideration, the rules of equity give the purchaser a lien upon the real estate involved for the payments made on the purchase, and this lien, too, is supplementary to that created by section 3050 of the Civil Code, which is applicable only to cases of failure of consideration. (*Montgomery* v. *Meyerstein*, 186 Cal. 459 [199 Pac. 800]; *Lockie* v. *Cooperative Land Co.*, 207 Cal. 624 [279 Pac. 428]; *Bennett* v. *Superior Court, supra.*)

 It is now necessary to emphasize the difference between rescission *in pais* and rescission in equity. The former class only have we thus far treated, for in it the law supplies, after notice and offer to restore, a promise of repayment, but in the latter this right follows the decree in equity which for the first time creates the duty to refund.

"The fact that the same word, 'rescission', is used to designate both the equitable remedy of cancellation and the termination of a contract by the act of a party has been productive of no little confusion. 'In many of the cases for rescission in equity language is used from which it might be inferred that precisely the same principles govern in suits in equity that are applied to determine the right of the party to sue at law'." (9 Cor. Jur. 1159.) "In the opinions in many of these cases the courts advert to the distinction, so often lost sight of, between the equitable remedy of rescission or cancellation, where the avoidance of the contract, with its indispensable adjunct of restoration, is accomplished by the decree of the court, and legal rescission, where the act of plaintiff in avoiding the contract reinvests him with his legal title or right to sue, and must therefore be accompanied with restitution of the thing received by him." (9 Cor. Jur. 1215.)

In *Gould* v. *Cayuga County Nat. Bank*, 86 N. Y. 75, 83, the court said: "At any rate the difference between an action to rescind a contract and one brought, not to rescind it, but based upon the theory that it has already been rescinded, is as broad as a gulf. They depend upon different principles and require different judgments."

In California the flame of confusion has been fed by the requirement that the rule as to tendering restoration prior to court action applies in both classes of rescission. (*Crouch* v. *Wilson*, 183 Cal. 576, 584 [191 Pac. 916]; *Kelley* v.

*Owens,* 120 Cal. 502 [47 Pac. 369, 52 Pac. 797]; *Gifford* v. *Carvill,* 29 Cal. 589.) In other jurisdictions it is necessary only in the unilateral or *in pais* rescission to have previously offered to restore to the party against whom the rescission is claimed everything of value received, and not so in equity. But California decisions plainly recognize the two classes of rescission. Our Civil Code specifically provides how a contract may be rescinded. Sections 1688–1691, inclusive, thereof, provide that a contract may be extinguished by a rescission and the grounds upon which this may be done, including the manner in which it is to be effected and they seem clearly to contemplate a rescission in proper cases by the individual act of one of the parties to the contract. It is provided in sections 3406–3408, inclusive, of said code, for the additional and supplemental action in equity by which a rescission may also be accomplished.

The case of *Loaiza* v. *Superior Court,* 85 Cal. 11, 13 [24 Pac. 707, 20 Am. St. Rep. 197, 9 L. R. A. 376], was an action where the basis of the rescission was fraud. Speaking of rescission on that ground, the court said: "It is *upon* and *after* rescission, and to enforce rescission, so far as the means of enforcing it are within the jurisdiction of the court. It does not require mutual consent of the parties to rescind. Under section 1689, either party may rescind when consent was given by mistake or obtained by fraud. According to the record, the purchasers did actually rescind, and rescind promptly before the action was brought, and did all that is required of them by section 1689, which gives them the right, and section 1691, which prescribes the mode of rescission. They did not restore, because restoration was not accepted; but they offered to restore, and in the action they again offer to restore, everything of value received by them under the contract. This offer, with the prompt and proper notice, makes the rescission complete, and entitles them to the aid of a court of competent jurisdiction in securing to them the results and fruits of the rescission. To secure those results and fruits is the object of the action they have brought. Those results and fruits are the restoration of the moneys and things of value which they gave in consideration of the purchase. . . . That the court has jurisdiction to afford the relief sought is supported by ample authority (citing many cases). . . . "

See, also, *Kelley* v. *Owens, supra.* Also *Spreckels* v. *Gorrill,* 152 Cal. 383, 394 [92 Pac. 1011], where it is said: "In effect, this is a suit to enforce a rescission which has been offered and refused, and it is of equitable origin and nature. Under our form of procedure whereby the distinction between forms of action is abolished, the court could in this action administer equitable relief, regardless of the question whether, under former systems of jurisprudence, the action would be deemed an action in *assumpsit* for the money paid, or an action in equity to compel rescission and a return of the consideration."

In *McNeese* v. *McNeese,* 190 Cal. 402, 404 [213 Pac. 36, 37], it is said: "The interposition of a court of equity to set the contract aside was not necessary to rescission. A contract may be rescinded by the act of the party entitled and desiring to rescind. It is well recognized that sections 1688, 1689 and 1691 of the Civil Code provide for rescission effected by the act of the parties (citing many cases)."

In the case of *Fitzhugh* v. *University Realty Co.,* 46 Cal. App. 198, 201 [188 Pac. 1023], the court said: "That *quasi* contract went into effect instantaneously upon the service of the notice of rescission, and at the place where such notice was served . . . and upon this contract created by the law the plaintiff had the right to bring an action in general *assumpsit* for money had and received." (See, also, *Bennett* v. *Superior Court, supra,* and *Orton* v. *Privett,* 202 Cal. 754, 757 [262 Pac. 713].)

It may be urged that in rescission *in pais* a party will never know until after the judgment of the court is given that he had a right to rescind and hence the causes of action are the same and in equity. This confusion arises from a failure to keep in mind that a court of law as well as a court of equity applies equitable principles. The distinction, as pointed out in the case of *Philpott* v. *Superior Court, ante,* p. 512 [36 Pac. (2d) 635], lies more in the relief administered than in the principles applied.

In any action for a money judgment alone, where rescission *in pais* is specially pleaded or is relied upon under the common counts, and the plaintiff is denied relief, and the attachment sued out is dissolved, the order of the court denying him a money judgment is not a decree in equity. The fact that the plaintiff is mistaken as to his right to rescind is not

proof that the action is in equity. The plaintiff in any kind of an attachment case, upon a hearing on the merits, may be denied relief and, as a consequence, the attachment sued out by him may be dissolved.

A further observation is necessary respecting the pleading in rescission cases. While it has been held that the common count is sufficient where the contract is executory, or the action is merely to procure a return of the consideration paid and the party rescinding has received nothing of value, still we do not think the rule should be extended to other classes of rescission. We adhere to the holding as announced in *Swanston* v. *Clark,* 153 Cal. 300, 303 [95 Pac. 1117], as follows:

"Again, a party to a contract cannot rescind at his pleasure, but only for some one or more of the causes enumerated in section 1689 of the Civil Code. One seeking to rescind a contract, or to enforce a rescission which he claims he has effected in the manner provided in section 1691 of the Civil Code, must allege facts showing that he had good right to rescind, and for what cause a rescission had taken place, or that a rescission had been made by consent. (18 Ency. of Plead. & Prac., pp. 802, 803, 804.) The same rule controls where a rescission is averred as a defense. (18 Ency. of Plead. & Prac., p. 844; *Bruck* v. *Tucker,* 42 Cal. 353; *Miller* v. *Fulton,* 47 Cal. 146; *Dorris* v. *Sullivan,* 90 Cal. 286 [27 Pac. 216]; *Kentfield* v. *Hayes,* 57 Cal. 411; *Arguello* v. *Bours,* 67 Cal. 450 [8 Pac. 49]; *Swasey* v. *Adair,* 88 Cal. 182 [25 Pac. 1119].)" (See, also, *Crouch* v. *Wilson, supra.*)

We have not thus far considered *in extenso* the case of *Stone* v. *Superior Court,* 214 Cal. 272 [4 Pac. (2d) 777, 77 A. L. R. 743]. It is clear from our holding in the Philpott case, *supra,* and from the foregoing discussion, that the Stone case must give way in order to prevent further confusion. It would be perplexing to have the right of attachment in all other *quasi*-contract cases and to deny it in cases of fraud. As already observed, the law implies the promise and affords an added remedy if the injured party elects to follow it. The action is not on the fraud, or failure of consideration, or duress, but upon *quasi* contract imposed by law. It was through failure to concede this addi-

tional relief that error crept into the decision in the Stone case.

We agree in this respect with the statement of Mr. Justice Shaw in his dissenting opinion in the case of *Willett & Burr* v. *Alpert,* 181 Cal. 652, 666 [185 Pac. 976], as follows: "The statute allows an attachment in all cases of implied contracts for the direct payment of money. The word 'direct' is apparently surplusage, for every contract for the payment of money would be a contract for the direct payment of money. The common law has always been in force in this state except as changed by statute. It is to be presumed that the term 'implied contract', as used in the attachment law, was intended to include all cases where at common law a contract was implied. If this be not so, great confusion would result."

In the Stone case the transaction was induced by fraud and the stock received was worthless. A proper rescission was made and a suit in *assumpsit* should lie to secure a return of the consideration paid. The case of *Willett & Burr* v. *Alpert, supra,* is not at variance with the conclusions announced herein. It was an action for damages, described by the court as follows (181 Cal., at p. 657): "As to the character of the action, it is simply one brought by the vendee in a contract for the sale of personalty against the vendors to recover damages for a failure of the vendors to deliver the full quantity of property claimed to be called for by the contract, a delivery of a part of the quantity having been made, and the vendee having paid the full purchase price. There was no entire failure of consideration so as to entitle the vendee to recover the purchase price paid on that ground, nor was there any attempt to rescind for a partial failure so that the vendee could recover the purchase price paid on that ground, and the action in fact is not brought for a recovery of the purchase price, or any part thereof, but is strictly for damages for a breach of contract." The action is clearly for damages for a tort and not upon an implied promise where the tort is waived.

The case of *San Francisco Iron etc. Co.* v. *Abraham,* 211 Cal. 552 [296 Pac. 82], is plainly an action on the case for fraud and deceit. The same is true of *Hallidie* v. *Enginger, supra.* The case of *Bennett* v. *Superior Court, supra,* is in substantial accord with the present holding. We have

but extended its doctrine to cover transactions rescinded for fraud, as well as failure of consideration.

Let the peremptory writ of mandate issue, directing the court below to dissolve the attachment, unless the plaintiffs in said action of *Harry E. Griffin et ux., Plaintiffs,* v. *Thaddeus D. McCall et al., Defendants,* No. 13573, on the coming down of this writ, justify said attachment by a showing that the security held by them, was or has become valueless.

Waste, C. J., Spence, J., *pro tem.,* Langdon, J., and Seawell, J., concurred.

SHENK, J., Dissenting.—I dissent. A copy of the complaint in the action of *Griffin* v. *McCall* is attached to the petition herein. In the first cause of action, in twenty-six paragraphs, the plaintiffs set forth the facts on which they rely for relief. They allege their contract with certain of the defendants for the purchase and sale of real property, under which contract written documents were executed and exchanged, and under certain of which the plaintiffs acquired the title to the real property involved. They allege at length the fraudulent representations under which they were induced to enter into the contract and acquire the property, with appropriate averments of falsity and reliance. They allege rescission of the contract, on notice, and an offer to restore, upon the discovery of the alleged fraud. They pray that their rescission be confirmed; that the court order a cancellation of the written instruments and compel the defendants to accept a reconveyance of the title to the property received by the plaintiffs in the transaction, and that money paid to the defendants be returned to the plaintiffs.

There can be no doubt that the pending action is a suit in equity, as distinguished from an action at law, and it is not an action on a contract, express or implied, for the direct payment of money. The second and third counts add nothing which may not be adjudicated on the trial of the main issues and are based upon the same transaction involved in the first cause of action. On the theory of the case of *Stone* v. *Superior Court,* 214 Cal. 272 [4 Pac. (2d) 777, 77 A. L. R. 743], in that respect, and other cases to the same effect, the right to an attachment should be denied.

Whether the Stone case is right or wrong on the facts there presented is entirely beside the question in this proceeding. Involved herein is an action to confirm a rescission and to obtain the benefits resulting therefrom by a decree in equity without which such benefits could not be secured. Nothing else incorporated in this complaint should be considered in determining the right to an attachment. In my opinion the peremptory writ should issue without conditions.

Curtis, J., concurred.