Ferguson v. Glidewell.

---

FERGUSON v. GLIDEWELL.

ATTACHMENT: *Effect of bond to discharge.*

Upon the execution of a bond to discharge an attachment under section 337, Mansfield's Digest, the attachment becomes discharged, the grounds of the attachment are no longer in controversy, and the obligors in the bond become bound absolutely to pay whatever judgment the plaintiff may recover in the action. (Cockrill, C. J., dissenting.)

APPEAL from *Pulaski* Circuit Court.
Hon. F. T. VAUGHAN, Judge.

*Blackwood & Williams*, for appellant.

The court erred in declaring the law. *Sec. 337, Mansf. Dig.* (which was *sec. 416 of Gantt's*), provides for a dissolving bond, which, when given, eliminates the attachment branch from the case and binds the surety on the dissolving bond to " perform the judgment of the court," whatever that may be. See *Waples on Attachment and Garnishment, p. 397 ; 2 Metcalf (Ky.), 445 and 558 ; 4 Bush. (Ky.), 445 ; 18 Kansas, 236; 3 Mo., 409; 31 Tex., 207; 23 Kansas, 113; 7 Ill., 468; 40 Mich., 210 ; 70 Pa., 248; 82 N. Y., 114; 24 Wis., 143; 29 Ohio St., 120 ; 21 Minn., 434.*

The act of 1867, under which the case of *Ward v. Carlton et al., 26 Ark., 64*, was decided, is not the same as *sec. 337, Mansf. Dig.*, which is *sec. 242 of the Civil Code.*

" *The Arkansas Justice*," a very valuable treatise, written by the counsel for appellee in this case, says : This dissolving bond is sometimes mistaken for a forthcoming bond, " and gets the defendant into serious trouble. It is called a *dissolving* bond, and differs very materially from the forthcoming bond. The dissolving bond *discharges*, and stands in lieu of the attachment, and the action proceeds as though no attachment had ever issued. This bond is conditioned absolutely to perform the judgment of the court, whatever it may be, and admits the validity of the attachment. In an action on the bond the obligors can neither contest the grounds for obtaining the attachment, nor the liability of the property to be taken under it." *Sec. 316, p. 178.*

This book bears upon its preface page the endorsement of Hon. Henry C. Caldwell, Judge of the Federal Court, Hon. A. H. Garland, Judges Sam W. Williams, E. H. English and Geo. A. Gallagher. In case of *Hill, as author, v. Hill, as lawyer*, judgment should be for plaintiff.

We are aware that his Honor, Judge Caldwell, has decided this question adversely to us, but we are satisfied that he did not have the *"Arkansas Justice"* before him when he collated his authorities.

Unless courts are to legislate or interpret the English language contrary to Webster and Worcester, our view of this law must be taken and the circuit court reversed.

*W. F. Hill*, for appellee.

The opposing counsel take occasion to refer to the *"Arkansas Justice"* in support of their case. Although it may antagonize my present position, I will say that the law as laid down in that book was based on the rule that, when one state adopts the statutes of another, it also adopts the interpretation put upon those statutes by the courts of that state.

But Judge Caldwell did not think this consistent with our own law, and has decided otherwise in the case of *Lehman v. Berdin, 5 Dil., 340*, to which the court is referred as being conclusive of this case.

BATTLE, J. Ferguson brought suit against W. F. Moore on an account, and sued out an attachment on the alleged ground that Moore was about to sell his property with the intent to defraud his creditors. The constable levied the order of attachment on certain property of Moore, who caused a bond to be executed to Ferguson by H. E. Glidewell, as surety, to the effect that Moore would perform the judgment of the court. The bond was approved and the property released. Moore filed an affidavit denying the statement of the affidavit of plaintiff upon which the attachment was issued. Judgment was rendered in favor of plaintiff against defendant on the account, and the attach-

ment was ordered to be discharged. Ferguson then brought this action against Glidewell on the bond executed by him for the amount of the judgment recovered against Moore. Glidewell answered, setting up the order discharging the attachment as his defense. Judgment was rendered in favor of Glidewell, and Ferguson appealed.

ATTACH-
MENT:
Effect of
bond to
discharge.

The only question in the case is, did the order of the court discharging the attachment release Glidewell from the obligation of his bond? This question has not been before this court since the adoption of the Code, but it is sometimes insisted that it did arise under prior statutes of this state, which were the legal equivalent of the statute under which the bond sued on was executed, and that this court decided it in the affirmative in *Delano v. Kennedy*, *5 Ark.*, *455; Childress v. Fowler*, *9 Ark.*, *159;* and *Wood v. Carlton*, *26 Ark , 662.*

The statutes of this state prior to the Code provided that suits at law by attachment might be commenced in any of the circuit courts of this state by filing in the office of the clerk of such court a declaration, petition, or statement in writing, setting forth the plaintiff's cause of action, an affidavit setting forth grounds of attachment, and a bond to the defendant, with sufficient security, to the effect that plaintiff will prove his debt or demand on a trial at law, or that he will pay such damages as shall be adjudged against him, and by suing out a writ of attachment against the property of defendant; that the defendant, at the time of the service of the writ of attachment, or at any time before judgment shall be rendered against him, might file a bond, "conditioned that he will appear to and answer the plaintiff's demand at such time and place as by law he should, and that he will pay and abide the judgment of the court, or that his surety will do the same for him;" and that when the defendant should file such bond, as re-

Ferguson v. Glidewell.

quired by law, the attachment should be released and the suit proceed as other suits at law. This court held that the proceeding authorized by these statutes was, in its intention, a compound proceeding, combining a proceeding *in rem* with a proceeding *in personam*, each having a distinct identity, but liable to be transformed, at any time before final judgment, into a proceeding solely *in personam*, and, as a whole, was founded upon the declaration, bond, affidavit and writ in harmonious combination; and that should this foundation be defective, as it would be in case the affidavit, the bond, or the writ should not be in conformity with the statute, or either should vary, the one from the other, in so much as to disturb the harmony of the whole as one suit, the entire proceedings, if appropriately assailed, would necessarily fail. It further held, that the object of these statutes was to obtain jurisdiction of the person of the defendant; that the bond which the defendant was authorized by these statutes to execute to secure the release of his property was essentially an instrument of bail, which accomplished substantially all the ends that were accomplished at common law by the taking of the bail bond below, together with the subsequent filing, entering and perfection of bail to the action above; that when a defendant in an action of attachment executed such a bond he did nothing more than a defendant did in England in an ordinary action, when he first executed a bail bond below to the sheriff and subsequently appeared, as he had covenanted to do, and entered into a recognizance of special bail to the action above, and perfected appearance there by the justification of his bail; that the bail bond below to the sheriff, and the recognizance of special bail to the action above, did not have the effect, at common law, of cutting off any of the defenses of the defendant; and that, therefore, the execution of the bond by

the defendant for the purpose of discharging the attachment, under the statutes referred to, did not impair any of the defendant's rights of defense, and that after its execution, he might defend the action either by plea in abatement, interposed in apt time and in due form, or by plea in bar, in the same manner, in every respect, as if he had not executed the bond, and had suffered the property attached to remain in the hands of the sheriff. *Childress v. Fowler, supra.*

But the Code has made radical changes in the pleading and practice in the courts of this state. The bond and affidavit made by the plaintiff to secure an attachment, and the writ of attachment, no longer form a part of the original proceedings by which an action at law may be commenced. Under the Code, attachment is a provisional remedy and merely ancillary to the action in which it is sued out. Its object, as expressly defined by the Code, is to secure the satisfaction of such judgment as may be recovered by the plaintiff. The bond the defendant is authorized to give to dissolve an attachment no longer fills the office of a bail bond at common law. It does not bind him to appear to and answer the plaintiff's demand at such time and place as by law he should, as it did under the former statute. The rules of construction heretofore followed by this court, in passing upon the effect of a bond of the defendant to dissolve an attachment upon his right to attack the attachment proceedings, are not, therefore, applicable to a dissolution bond executed under the Code, the reason having ceased to exist.

The bond sued on was executed under *section 337, of Mansfield's Digest,* which reads as follows:

" If the defendant, at any time before judgment, causes a bond to be executed to the plaintiff by one or more sufficient sureties, to be approved by the court, to the effect

that defendant shall perform the judgment of the court, the attachment shall be *discharged*, and restitution made of any property taken under it, or the proceeds thereof."

In construing statutes like this the courts are not in accord. In *Lehman v. Berdin, 5 Dillon, 340,* the United States circuit court for the eastern district of Arkansas, in construing the section under which the bond in question was executed, held that a bond executed in accordance therewith "does not estop the defendant from traversing the affidavit for attachment, and defending against the attachment in every respect, as if such bond had not been executed, and the property had remained in the hands of the officer;" and that, "if the attachment is not sustained, the plaintiff, though he recover judgment for his debt, cannot resort to the bond to compel payment of such judgment."

*Section 265,* of the Code of South Carolina, is a section similar to *section 337,* of Mansfield's Digest, and concludes as follows : "In all cases the defendant may move to discharge the attachment, as in the case of other provisional remedies."

In *Bates v. Killian, 17 S. C., 553,* the defendant having given a bond under this section, the court held he did not thereby waive his right to have the attachment discharged as irregularly and improvidently granted, the court laying stress upon the conclusion of the section under which the bond was given.

*Article 259,* of the Louisiana Code of Practice, as amended by the act of 17th of March, 1852, provided, that "the defendant, if he appear either in person or by attorney, may, moreover, in every stage of the suit, have the property attached *released,* by delivering to the sheriff his obligation for the same, exceeding by one half the value of the property attached, with the surety of a good and solvent per-

son residing within the jurisdiction of the court where
the action was brought, that he will satisfy such judg-
ment, to the value of the property attached, as may be
rendered against him in the suit pending."

In *Love v. Voorhies, 13 La. Ann., 549*, the defendant hav-
ing given bond under this article, the court held the bond
had the effect to release the seizure of the property at-
tached, but did not dissolve the attachment, and that the
defendant was not thereby debarred from subsequently
moving to quash the order of attachment.

In the Ohio Code there are the same provisions as those
contained in *sections 327 and 337, of Mansfield's Digest*.

In *Myers v. Smith, 29 Ohio St., 120*, an attachment was
issued, and the defendant thereafter executed a bond to
the effect that he would perform the judgment of the
court, and the court held that the effect of the bond was
to supersede all proceedings under the attachment, and to
bind the sureties on the bond to perform the judgment
that might be recovered against them in the action.

In *McAllister v. Eichengreen, 34 Md., 54*, the appellant was
one of the obligors in a bond, given for the purpose of dis-
solving an attachment, which had been sued out of the
court of common pleas of Baltimore city against Moses
Coleman and —— Coleman, and levied upon their goods.
The condition in it was, "that if the said Moses Coleman
and —— Coleman, should satisfy any judgment that shall
be recovered in said case against them, then the said obliga-
tion should be void; else to be and remain full force and
virtue in law." The bond was filed and the attachment
dissolved. The case was then proceeded in and a judgment
obtained against the Colemans in favor of the appellee, for
$771.75, and $13.60 costs. The court said: "This bond
and judgment constitute the cause of action set forth in
the declaration, upon which the appellees base their right

to recover. By the very terms of the bond the recovery of the judgment fixed the amount to be paid under it. * * * A judgment had settled it beyond controversy."

The Code of Iowa, of 1851, provided that the defendant in an attachment might, at any time before judgment, *discharge* the property attached, or any part thereof, by giving bond " in a penalty at least double the value of the property sought to be released, conditioned that such property or its estimated value shall be delivered to the sheriff to satisfy any judgment which may be obtained against the defendant in that suit, within twenty days after the rendition thereof."

In *Austin v. Burgett, 10 Iowa, 302*, an attachment was issued, and the property of the defendant was attached, and he gave the bond prescribed by the Code, and thereafter moved to quash the attachment. The court held that the bond had the effect to release the property from the custody of the law, and to leave it in the possession of the debtor or his legal representatives, free from the attachment, and subject to any disposition he or they might think proper. The court said : "This bond is a new security and takes the place of the attachment lien ; and when executed and delivered, it follows that the attachment has expended its force and is no longer operative. Under such circumstances, to dissolve the attachment upon motion would be, in our judgment, a useless, not to say nugatory act on the part of the court."

Section 337 of Mansfield's Digest is a copy of a Kentucky statute. In *Inman v. Strattan, 4 Bush., 445*, an attachment was issued, and the defendant, after his property was attached, executed a bond to the plaintiff to the effect that he would perform the judgment of the court; and thereafter filed an affidavit controverting the grounds of the attachment. The court decided that the execution of such

a bond discharged the attachment by operation of law, and rendered the obligors in the bond unconditionally bound to perform the judgment of the court in the action; that the sufficiency of the grounds for obtaining the order of attachment could not thereafter be entered into; and that the defendant was thereby concluded from controverting the grounds of the attachment. See, also, *Hazelrigg v. Donaldson, 2 Metcalf, 445.*

New York, Illinois, Wisconsin, Missouri, Michigan, Kansas and Texas, have, or have had, statutes containing substantially the same provisions as are contained in section 337 of Mansfield's Digest. The courts in these states have held that the execution of a bond under and in accordance with these statutes, estops the defendant from controverting the attachment, and renders the obligors in the bond absolutely liable for the amount of any judgment the plaintiffs may recover in the action, without reference to the question whether the attachment was rightfully or wrongfully sued out. *Haggart v. Morgan, 1 Seld., 428; Coleman v. Bean, 42 N. Y., 94; Delany v. Brett, 4 Robertson, 712; Bildersee v. Aden, 62 Barb., 175; Dieroff v. Winterfield, 24 Wis., 143; Payne v. Snell, 3 Mo., 490; Paddock v. Matthews, 3 Mich., 18; Kennedy v. Morrison, 31 Tex., 220; Endress v. Ent, 18 Kan., 236; The People v. Cameron, 2 Gilman, 468.*

But it is sometimes contended that this court has decided this question differently in *Ward v. Carlton, 26 Ark., 662.* The act construed in that case was the act of March 7, 1867, which amended the attachment laws of the state so as to allow the defendant to contorvert the grounds of attachment set forth in the plaintiff's affidavit; and re-enact the statute allowing the defendant to dissolve the attachment by giving bond, conditioned, that he will appear and answer the plaintiff's demand at such time and place

as by law he should, and that he will pay and abide the judgment of the court; and limited the liability of the sureties on such bond to the value of the property at- tached.   This court held that the intention of this act was to allow the defendant to controvert the truth of the affi- davit on which the attachment was issued, and to allow him to do so, notwithstanding he has given bond to dis- solve the attachment.   The reason given for this construc- tion is, if he was not allowed to do so, an unscrupulous creditor, by perjury, could take advantage of the necessities of his debtor, cause his property to be attached, and force him to give bond and preclude himself from putting in is- sue the truth of plaintiff's affidavit, in order to get pos- session of his property and thereby save himself from ruin ; and that the object of the act was to remedy such hardships.   Such is not the condition of a defendant under the present attachment laws of the state.   He can get the possession of his property without giving a bond to dis- solve the attachment.   The present attachment laws of this state are entirely different from the act of March 7, 1867, and the statutes to which it is an amendment, and *Ward v. Carleton,* can furnish no aid in construing them.

Prior to the adoption of the code the defendant in an attachment suit could get possession of his property after it was attached by giving the bond to dissolve the at- tachment.   This was the only bond he could give.   Now he can do so by giving either one of two bonds.   *Section 327 of Mansfield's Digest* provides that the sheriff may deliver to him any property attached and taken from his possession, upon the execution of a bond by him and one or more sufficient sureties, to the effect that the ob- ligors are bound, in double the value of the property, that the defendant shall perform the judgment of the court in the action, or that the property, or its value, shall be forth-

coming and subject to the order of the court for the satis-
faction of such judgment.  Section 337 says: "If the de-
fendant, at any time before judgment, causes a bond to
be executed to the plaintiff by one or more sufficient sure-
ties, to the effect that defendant shall perform the judg-
ment of the court, the attachment shall be discharged and
restitution made of any property taken under it, or the
proceeds thereof."   If he wishes to contest the attachment,
and, in the meantime, remain in possession of his property,
he can do so by giving the forthcoming bond.   Section 380
provides that the defendant may controvert the attachment
by filing an affidavit denying all or any of the material
statements of the affidavit upon which the attachment is
issued.   Can he do so after he has given bond in accord-
ance with section 337?   Sections 377–380 provide that an
attachment shall be sustained or discharged at the time
judgment is rendered in the action, unless for sufficient
cause the court extends the time of deciding it; that if
judgment is rendered in favor of the defendant the attach-
ment shall be discharged; that if judgment is rendered in
favor of the plaintiff, and no affidavit or answer, verified by
oath, by the defendant be filed, denying the statements of
the affidavit upon which the attachment was issued, or mo-
tion be made to discharge it, the court shall sustain the
attachment; and that upon the attachment being sustained,
the property attached, or its proceeds, or the securities
taken upon the attachment, shall, by appropriate orders,
be applied in satisfaction of the judgment.   Section 337,
as we have seen, provides that the defendant may dis-
charge the attachment by giving bond that he will perform
the judgment of the court.   How can the attachment be
sustained or discharged after the defendant has discharged
it by giving bond?   If the court sustains the attachment,
the statute makes it its duty to apply, by appropriate or-

ders, to the satisfaction of the judgment recovered by the plaintiff, the property attached, or its proceeds, or the securities taken upon the attachment. This cannot be done if the defendant has given bond to discharge the attachment, because the property attached, its proceeds, and the securities taken upon the attachment have passed beyond the control of the court, and are no longer in the custody of the law. By securities referred to in this connection cannot be meant the bond to discharge the attachment, because no action could be taken or judgment rendered upon it in the action in which it was given prior to the act of November 10, 1875, amending the attachment laws of the state, which was passed long after the statute saying what the action of the court should be upon sustaining the attachment.

But this is not all. Section 354, a part of the act of November 10, 1875, says: "If the plaintiff shall recover against the defendant, and the attachment shall have been discharged upon the execution of a bond, as provided by section 337, then the court shall render judgment against the defendant and his sureties in said bond for *the amount recovered* and the costs of the suit."

Section 355, also a part of the same act, reads as follows:

"If the defendant shall have given bond for the retention of the property attached, as provided by section 327, *and the attachment shall be sustained*, the court or jury, in addition to finding the amount of debt or damage due to the plaintiff, shall, upon demand of the plaintiff, also assess the value of the property attached, and the court shall, in addition to judgment against the defendant for the amount found due to the plaintiff and costs, render further judgment, that in case said property shall not be delivered up to the proper officer to be sold, and said officer shall not be able to make said judgment out of the property of said

defendant, execution shall issue against the property of said sureties for so much of said judgment as shall not exceed the value of said property, which execution shall be enforced as in other cases."

Construing all the statutes we have. cited together, our conclusion is, Moore was precluded by the bond sued on from controverting the grounds of the attachment it was given to discharge, and that Glidewell, the obligor therein, was absolutely liable for the amount recovered by the plaintiff in the action in which it was given, without reference to the question whether the attachment was rightfully or wrongfully sued out.

The judgment of the court below is, therefore, reversed, and this cause is remanded with an instruction to the court to grant appellant a new trial.

### DISSENTING OPINION.

COCKRILL, C. J. It has been the settled policy of this court from its first utterance on the subject in 1843, in the case of *Delano v. Kennedy, 5 Ark., 457*, that a statutory bond given by a defendant in attachment, whatever its nature, does not impair any of his rights of defense. The statute in force when this decision was rendered provided that when the defendant gave bond, the "attachment should be *released*, and the suit proceed as other suits at law." *Secs. 13 and 14, chap. 17, Gould's Dig.* But the construction given to it by this court was that the *release* mentioned in the statute, referred not to the discharge of the attachment itself, but only to its grasp and lien upon the defendant's property, the bond being construed to stand in lieu of the property. At that day the statute did not permit the plaintiff's affidavit for attachment to be traversed in any case, whether a bond had been given or

not. If it had been permitted at all, it is clear that the execution of the bond to release the attachment would not have cut off this right, because it was. permissible after executing the bond to question the validity of the attachment in every way it could· be questioned in the absence of a bond; and controverting the grounds of the attachment is only a method of showing its invalidity. The decisions conforming to this construction are numerous in our reports. The law stood thus until 1867, when it was so amended as to allow the defendant to put in issue the truth of the plaintiff's affidavit to procure the attachment. The bond then required of the defendant was said by this act to *dissolve* the attachment, and like the bond under the former law, was upon the condition that he should "abide and perform the judgment of the court." The leading feature of this act was the same as that of the Code adopted in 1868, but not so broad—namely, the abolition of the indissoluble union of the two parts of the attachment proceeding, which was the distinctive feature of the old "suit-in-attachment."

By it the attachment became merely ancillary to the suit *in personam*. *Holliday v. Cohen, 34 Ark., 713–14.* But the court did not regard this change as in anywise affecting the defendant's right to defeat the attachment after executing the bond. The very question now before us was presented to this court for determination under the act of 1867, and the previous policy of regarding the defendant's bond as only standing in lieu of the property that had or might have been seized under the writ, was adhered to, and the defendant was permitted to controvert the truth of the plaintiff's affidavit, notwithstanding he had executed the bond to *dissolve* the attachment. This was the case of *Ward v. Carleton, 26 Ark., 662.* The effect and condition of the bond under that statute was the same as that now before

14–48

us, except that in the act of 1867 the bond is said to *dissolve* the attachment, while that now in force uses the word *discharge* instead. It will hardly be contended that this change of language was intended to affect the meaning of the statute. It is a rule of construction we have followed, that when a former law which has been construed by this court has been revived or re-enacted, the presumption will prevail that it was intended to adopt with it the meaning the court had engrafted upon it. Applying this rule, and continuing to read the statute which provides for the dissolving bond in the light of our former decisions, the defendant's right to question the validity of the attachment, after giving the bond, by controverting the truth of the plaintiff's affidavit, or otherwise, is still preserved, unless there is some other provision of the statute depriving him of it. It was an easy matter for the legislature to work the change, if it was thought right to do so, but nothing can be found in the Code that effects it, for unless you first change our former construction of the provision providing for the dissolving bond, the other provisions on the subject are readily harmonized with it. The only provision that is thought to influence it is *sec. 354 of Mansf. Dig.*, which is taken from the act of 1875. It authorizes judgment against the surety in the dissolving bond when the plaintiff recovers in the action. Its object was to enlarge the plaintiff's remedy and not to cut off the defendant's right of defense. Prior to that act, it was necessary for a plaintiff who had obtained his judgment in the attachment suit to bring a separate action on the bond in order to recover upon it. This provision relieved him of the unnecessary cost and delay of a second suit, and authorized judgment against the surety in the bond in the first instance. Why should the *recovery* by the plaintiff alluded to in the act be construed to have a different

meaning from the *judgment* obtained by him in the former laws, and work a change of policy of nearly a half of century's standing? The statute should be construed in harmony with the other provisions on the same subject with which it is not wholly inconsistent.

It is a reasonable construction, and there is authority to sustain it outside of our own court, that the use of the word "judgment" in an attachment statute means a judgment upon the whole case—*in personam* and *in rem*. *Gass v. Williams, 46 Ind., 253.*

If there is no affidavit and bond by the plaintiff in attachment, a dissolving bond executed by the defendant and his surety is still a nullity, as was ruled in *Williams v. Skipwith, 34 Ark., 329,* determined in 1879. It cannot be the intention to hold that the parties to the bond shall be permitted to take advantage of technical defects in the method of procedure to be relieved of liability, and yet be cut off from the more substantial right of proving the truth of their case in a court of justice.

The circuit court of the United States sitting at Little Rock, governed as it is by our law of procedure in such cases, and professing to follow the decisions of this court on the question, has universally permitted the truth to be shown, notwithstanding the execution of the dissolving bond (see *Lehman v. Berdin, 5 Dillon, 340); and this I take to be the generally accepted practice throughout the state. Many persons, doubtless like the appellee, have executed such bonds for unfortunate debtors, assuming, as they supposed, a liability contingent upon the attacher establishing the truth of the affidavit for attachment by proof whenever it should be controverted. They are entrapped by the instability of the law. It is not sufficient to answer that they should have executed the forthcoming bond. They were justified in regarding the question of the extent of

their liability on the dissolving bond as *stare decisis;* and, moreover, the forthcoming bond is inadequate to many emergencies. Property that is released under it is still encumbered by the attachment lien, and may be retaken by the officer holding the writ after judgment. The defendant may become the custodian of his own property under this bond, but he cannot sell it except subject to the attachment lien and the plaintiff's right to have it retaken under the writ. Few would care to become purchasers under such circumstances. What, then, is to become of the business of the merchant or farmer who has committed no act to justify the attachment, but whose goods, stock or produce are attached, and whose credit or means of subsistence depend on his ability to *sell* the attached property? He may desire to ship his stuff to meet a rising market, or prices may be declining in a time of panic. Good faith to his sureties would preclude the execution of a forthcoming bond and a subsequent sale of the property. He must then submit to the loss, under the rule now established, and take his chance upon recovering against the plaintiff's attachment bond for such damages as the law permits a recovery for at all; or give an undue preference to the unrighteous attachment, and submit to the costs by executing a dissolving bond. The result accomplished by the change now made is, therefore, to encourage litigation upon the one hand, and to shut out the light of truth on the other as a reward only to the reckless swearer and the perjurer.

I think the established precedents should be adhered to and the judgment affirmed.