[S. F. No. 8136. In Bank.—December 24, 1917.]

PASSOW & SONS (a Corporation), Respondent, v. UNITED STATES FIDELITY & GUARANTY COMPANY (a Corporation), Appellant.

ATTACHMENT — UNDERTAKING FOR RELEASE OF PROPERTY — NATURE OF UNDERTAKING — STATUTORY OBLIGATION.—Under section 540 of the Code of Civil Procedure, requiring the sheriff, to whom a writ of attachment is issued, to attach and keep the property of the defendant unless the defendant give him security by an undertaking, with sureties, in an amount sufficient to satisfy the demand, or in an amount equal to the value of the property attached or about to be attached, in which case to take such undertaking, an undertaking, given on the release of attached property which by its terms bound the surety to the effect that if the plaintiff, in that action recovered judgment, the surety would, on demand, pay the amount thereof to the plaintiff, was a statutory undertaking, and not a mere obligation to pay the debt in consideration of the release of the obligation.

ID.—UNDERTAKING FOR RELEASE OF PROPERTY—EXECUTION AND DELIVERY —ACTION ON UNDERTAKING.—Where attached property is released by a sheriff in the usual way, on the giving of an undertaking in the form required by section 540 of the Code of Civil Procedure, the character of the undertaking, as a statutory undertaking, is not changed by the fact that it is passed directly to the plaintiff instead of being delivered to the sheriff, and an action on the undertaking

is governed by the provisions of section 552 of the Code of Civil Procedure.

ID.—ACTION ON UNDERTAKING FOR RELEASE — PLEADING — DEMURRER TO COMPLAINT.—A complaint in an action on an undertaking, given to obtain the release of attached property, which does not show that the remedy by execution has been regularly pursued, and that the execution was regularly returned unsatisfied in whole or in part before the action was begun, is bad on general demurrer.

ID.—ACTION ON UNDERTAKING FOR RELEASE — EXECUTION PREMATURELY RETURNED.—*Under section 683 of the Code of Civil Procedure,* requiring an execution to be made returnable not less than ten nor more than sixty days after its receipt by the sheriff, an execution cannot be regularly returned before the expiration of ten days after its receipt by the sheriff.

ID.—ACTION ON UNDERTAKING—EXECUTION PREMATURELY RETURNED— DEFECT, HOW CURABLE—PLEADING AND PROOF.—Where issuance and return of an execution are necessary as a foundation for an action upon an undertaking to release an attachment, the defect of a premature return of the execution is curable by proof that the execution debtor in fact had no leviable property at any time within the minimum lawful period for its return, but the party instituting suit on the undertaking must allege and prove that fact, and a complaint on such an undertaking which alleges a premature return of an execution, but is silent as to whether the execution debtor had any leviable property during the required period, fails to state facts sufficient to constitute a cause of action.

ID.—UNDERTAKING FOR RELEASE—COLLUSION—DISCHARGE OF SURETIES.— *Collusion, between the defendant and plaintiff* in an attachment suit, whereby the plaintiff recovers a larger amount than he is entitled to, will discharge a surety on an undertaking given to release the attachment, whereby the surety undertakes to pay any judgment recovered.

ID.—APPEAL—CONFLICTING EVIDENCE.—In an action against the surety on an undertaking to release an attachment, the supreme court will not interfere with findings by the trial court, on conflicting evidence, against the defense that the plaintiff in the attachment suit, through collusion with the defendant therein, recovered a larger judgment than he was entitled to, and against the defense that he encouraged and permitted the judgment debtor to dispose of his property without satisfying an execution.

ID.—LIABILITY OF SURETY ON UNDERTAKING.—It constitutes no defense to an action against a surety on an undertaking to release an attachment that the attachment was secured by a false affidavit that the attaching creditor's debt was not secured by any lien, the surety being presumed to be aware of the facts and to have made the contract accordingly, and being therefore not in a position to complain

of the attaching creditor's conduct in bringing the action upon a debt which was secured by some sort of lien upon property, which he might have enforced instead of waiving it and bringing suit for the debt.

ID.—ACTION ON UNDERTAKING TO RELEASE — EVIDENCE — DISPOSITION OF PROPERTY BY JUDGMENT DEBTOR.—In an action against the surety on an undertaking to release an attachment, evidence of the disposition of goods purchased by the judgment debtor from the attaching creditor and completely delivered to the judgment debtor at the time the judgment was recovered was admissible if offered to show that the judgment debtor had disposed of this property after the issuance of execution against him, but if he had disposed of the goods before the execution, and no collusion was proved between him and the plaintiff relating thereto, the evidence was inadmissible.

APPEAL from a judgment of the Superior Court of the City and County of San Francisco, and from an order denying a new trial.   Geo. A. Sturtevant, Judge.

The facts are stated in the opinion of the court.

Leon E. Morris, and M. C. Lynch, for Appellant.

Keogh & Olds, and W. H. Morrissey, for Respondent.

SHAW, J.—The defendant has appealed from the judgment and from an order denying its motion for a new trial.

Plaintiff sued to recover judgment upon an undertaking given by the defendant, as surety for one Charles Bowman, to obtain the release of an attachment issued out of the superior court of Merced County, in an action wherein Passow & Sons was the plaintiff and Charles Bowman was defendant.   The undertaking was given in pursuance of section 540 of the Code of Civil Procedure.   By its terms it bound the defendant to the effect that if the plaintiff in that action recovered judgment, the defendant would on demand pay the amount thereof to said plaintiff.   Passow & Sons is a corporation.

1. There was a general demurrer to the complaint, which was overruled.   In this ruling we think the court erred.

The complaint alleged the beginning of the action against Bowman for the recovery of money, the execution of the undertaking herein sued on, for the purpose of releasing the attachment issued at the time of the beginning of said action, ·

and the subsequent recovery on January 28, 1913, of judgment in that action against Bowman for $923.27. The undertaking was made a part of the complaint. We cannot agree with the plaintiff's contention that the undertaking is a mere obligation to pay the debt in consideration of the release of the attachment, and was not an undertaking authorized by section 540. It was in the form prescribed by that section and was in all substantial respects the same in form as the undertakings considered in *Preston* v. *Hood,* 64 Cal. 406, [1 Pac. 487], *McCutcheon* v. *Weston,* 65 Cal. 37, [2 Pac. 727], and *Gardner* v. *Donnelly,* 86 Cal. 372, [24 Pac. 1072], and which were held to be statutory bonds under that section. Section 552 of the Code of Civil Procedure provides that "if the execution be returned, unsatisfied, in whole or in part, the plaintiff may prosecute any undertaking given pursuant to section five hundred and forty or section five hundred and fifty-five, or he may proceed, as in other cases, upon the return of an execution." In alleging compliance with this section the complaint stated that an execution was issued on February 14, 1913, which was returned wholly unsatisfied on February 19, 1913. The effect of section 552 is to make the regular issuance and return of an execution, unsatisfied, in whole or in part, a condition precedent to the maintenance of an action upon the undertaking. (*Brownlee* v. *Riffenburg,* 95 Cal. 449, [30 Pac. 587].) The thing contemplated and required by section 552 is that the plaintiff in the attachment suit shall exhaust his remedy by execution before proceeding against the surety on the undertaking. It is therefore necessary that he shall show in his complaint upon the undertaking that the remedy by execution has been regularly pursued and that a return of the execution unsatisfied in whole or in part was regularly made before the action was begun. The code provides that "the execution may be made returnable, at any time not less than ten nor more than sixty days after its receipt by the sheriff." (Code Civ. Proc., sec. 683.) The execution in this case was made returnable within sixty days after the sheriff's receipt thereof. Under section 683 it could not be regularly returned before the expiration of ten days from its receipt by the sheriff. The complaint shows that it was returned within five days thereafter. Where a third person, standing in the relation of a surety for the principal debtor, is entitled to have the

remedy on execution exhausted before an action lies against him, such execution must be held by the sheriff for at least the minimum period prescribed by the law, before its return unsatisfied can be made the basis of such action, at least unless it is shown that during the minimum period the execution defendant was without means or property wherewith to satisfy it. "The trustee cannot be held liable to a *scire facias* before the return day; because the execution may be 'otherwise satisfied,' at any time whilst it remains in force, although he has refused to pay over to the officer goods, effects, or credits sufficient to satisfy it." (*Adams* v. *Cummiskey,* 58 Mass. 422.) In *Austin* v. *Goodale,* 58 Me. 109, the same principle was declared, the court stating that until the return day had expired the debtor might voluntarily pay the judgment and thereby relieve the third party from his contingent liability, saying "it is only when the officer has used the powers conferred by the process, during the whole time given to him, that he can return it unsatisfied within the meaning of the statute," and that the other party cannot be subjected to further process "until it is shown by a return of *nulla bona* that the execution could not be satisfied otherwise during the time it was in force." In *Dillon* v. *Rash,* 27 Mo. 243, the court said: "Regularly, an execution cannot be returned before the return day. If search is made and no property is found, it does not follow but that the defendant may have property before the return day of the execution. He may acquire it after the return is made." The provisions of section 683 as to the period for the return of an execution allow an execution made returnable *within* sixty days to be returned after the expiration of ten days from its receipt by the sheriff. (3 Freeman on Executions, 3d ed., sec. 353, p. 2016.) There is a qualification of this rule, in other states, to the effect that where the issuance and return of an execution are necessary as a foundation for further proceedings against the judgment debtor, as, for example, proceedings supplementary to execution, or a creditor's bill, a premature return unsatisfied may be cured by proof that the execution debtor in fact had no leviable property. In our opinion the reasons in favor of this rule justify its application to a premature return, where the return is necessary as a foundation for an action upon an undertaking to release an attachment. It is obvious that if in fact the judgment debtor had no prop-

erty subject to levy, or means wherewith to satisfy the execution, at any time during the period between its issuance and the earliest lawful return day thereof, a premature return could not cause any loss or prejudice to the surety upon the undertaking. It would appear to be just and reasonable that if these facts be clearly established, the return unsatisfied, though premature in point 'of time, may still be available to support a subsequent suit or proceeding. The effect of this, however, is that the party instituting the suit on the undertaking must allege and prove that the execution could not have been satisfied during the minimum lawful period for its return. In the present case the complaint contains no such allegation. It alleges a premature return, but is silent upon the question whether at that time or at any other time the judgment debtor, Bowman, had any property or means. There was no attempt by the plaintiff at the trial to prove that Bowman had no property during that period. Because of the failure to allege these facts the complaint fails to state facts sufficient to constitute a cause of action.

In *Preston* v. *Hood,* 64 Cal. 408, [1 Pac. 487], ·the court says that ''a direction to the sheriff to return an execution without levy'' will not discharge the surety. As a general remark concerning the law of suretyship there is no objection to this statement. It was not intended to be applicable to a premature return of the execution required by section 552. That question was not involved in the case. It cannot be deemed to be contrary to the authorities above mentioned.

2. The defendant in its answer, among other things, alleged that by collusion between Bowman and the plaintiff in the trial of the main action, judgment was given for a larger amount than the plaintiff was entitled to upon the cause of action sued on. If this were true, the defendant would be released from liability upon the undertaking. But the evidence of collusion was not satisfactory, and there was evidence from which the court may have justly believed that the plaintiff was acting in good faith. It is also alleged in the answer that upon the issuance of the execution the plaintiff encouraged and permitted Bowman to dispose of such property as he had without applying the same to the satisfaction of the execution, by reason whereof the defendant claims to be exonerated from liability. The evidence on this sub-

ject is also conflicting, and we cannot disturb the finding concerning it.

3. Another claim, which is rather obscurely alleged in the answer, is to the effect that at the time the action against Bowman was begun the plaintiff had a lien upon certain property for the payment of the debt sued for, and that by its conduct in the prosecution of the action and at the trial thereof, it released this lien and thereby discharged the surety on the undertaking. The action was for the recovery of the price of certain goods sold by the plaintiff to Bowman. The price agreed on was one thousand dollars, of which two hundred dollars was to be paid before delivery, and forty dollars per month during each month thereafter. The agreement was in writing, signed by the parties, and it acknowledged the receipt of the goods by Bowman. It further provided that until the price was fully paid the property should belong to the plaintiffs, without right in Bowman to sell or encumber the same. There was a further provision, however, that if Bowman failed to pay any installment when due, or should refuse to accept delivery or return the goods, then the entire balance of the price should at once become due and payable, and that thereupon the plaintiff at its option could either sue for the whole price or cancel the contract and take possession of the goods. Bowman failed to pay the price, and the plaintiff thereupon began the main action. In suing out the attachment the affidavit on behalf of the plaintiff stated, as the law required, that the debt was not secured by any lien. On the trial of that action Bowman appeared and consented to a judgment for the whole price unpaid, on condition that the title to the property should pass to him. Thereupon judgment was rendered accordingly, and full delivery was made to him in accordance with his proposal. It is claimed by the defendant that at that time the plaintiff had a lien upon the property for the security of the price which might have been enforced, and that by releasing the same to Bowman it impaired the surety's rights and exonerated it from liability on the undertaking. No attack was made upon the attachment by Bowman in the main action. Instead of moving that it be dissolved on the ground that the affidavit that the debt was not secured by a lien was false, he procured the exemption of his property from the levy by giving the undertaking here sued on. In this condition of

affairs the present defendant executed the undertaking sued on. It must be presumed to have accepted the conditions then existing as the measure of its rights, and to have executed the undertaking with that understanding. The principle is settled in this state that a surety upon an undertaking given under section 540, to release an attachment, cannot interpose the objection, in a suit upon such undertaking, that the property attached, if any, was not subject to levy, or that the attachment was irregularly issued because of a false affidavit filed by the plaintiff to procure it. In *McMillan* v. *Dana,* 18 Cal. 349, the court said of such an undertaking, that the sureties promise, "in consideration of the release of the property from the attachment, that in the event of a recovery of the judgment by the plaintiff, they will pay the amount of the judgment. . . . The object of giving the undertaking was to procure this release, and this release was had in consequence of the undertaking; and the consideration of the undertaking, therefore, is the release so procured. In consideration of this release, the obligors agree to pay the judgment. Whether the property was redelivered to Vischer or not was wholly immaterial. . . . Nor does it matter whether the property was subject to attachment or not. That matter cannot be tried in this collateral way. It is enough that the plaintiff had this property levied on as subject to his debt, and that these sureties procured its release upon the stipulation that, in consideration of such release, they would pay the amount of the judgment to be recovered by the plaintiff in the attachment suit. Nor was any proof necessary of the preliminary proceedings connected with or preceding the levy; for these defendants admit the levy of the attachment on this property, and this is enough." On petition for rehearing the court said that "by the contract the parties have bound themselves to pay in an event independent of all considerations of this sort," referring to the fact that they had bound themselves to pay the judgment in consideration of the discharge. This decision was cited and followed in *Gardner* v. *Donnelly,* 86 Cal. 367, [24 Pac. 1072], where it was held that when the undertaking was issued to procure the release of property already attached, and was accepted by the sheriff, it was immaterial whether he thereupon redelivered the property to the judgment debtor or not, so far as the liability of the sureties on the undertaking was

concerned. So in *Preston* v. *Hood,* 64 Cal. 405, [1 Pac. 487], the court held that sureties upon such an undertaking were not released by the fact that the sheriff, after accepting the undertaking, released the property previously levied on, nor by the fact that the judgment in the attachment suit was entered by consent and execution stayed by agreement, for sixty days thereafter. In *McCormick* v. *National Surety Co.,* 134 Cal. 511, [66 Pac. 741], there were two defendants in the main action, the property of one only being attached. The undertaking was thereupon given for the release of the attachment. Upon the trial of that action judgment was given in favor of the plaintiff against the other defendant, and in favor of the defendant, whose property had been attached. It was held that the ownership of the property attached was of no concern to the surety, and that he was liable on the undertaking for the full amount of the judgment recovered against the other defendant, the court saying, "whether it belongs to a third party, or for any reason is not lawfully subject to the attachment, is a question to be litigated between plaintiff and the adverse claimant, and in no way affects the surety's express covenant to restore." The undertaking in that case was given for the redelivery of the property, or the payment of the debt, as provided in sections 554 and 555 of the Code of Civil Procedure, but the principle is the same whether the undertaking is in the alternative, as in that case, or is positive, to pay the judgment when rendered, as in the present case. In *McCutcheon* v. *Weston,* 65 Cal. 39, [2 Pac. 727], the court decided that the surety was liable in such undertaking, although there were two defendants to the attachment suit, and the judgment was against one only. To the same effect see *Ferguson* v. *Glidewell,* 48 Ark. 195, [2 S. W. 711]; *Coleman* v. *Bean,* 14 Abb. Pr. (N. Y.) 38; *Haggart* v. *Morgan,* 5 N. Y. 428, [55 Am. Dec. 350]; *Myers* v. *Smith,* 29 Ohio St. 120; *McAllister* v. *Eichengreen,* 34 Md. 54; *Austin* v. *Burgett,* 10 Iowa, 302; *Inman* v. *Strattan,* 67 Ky. 445. In view of these authorities we are of the opinion that the defendant here is not in a position to complain of the conduct of the plaintiff in bringing the action upon a debt which was previously secured by some sort of lien upon property, which he might have enforced instead of waiving it and bringing suit for the debt. The surety must be presumed to have been aware of the facts and to have made its

contract accordingly. It was an unconditional agreement to pay the amount of the judgment when rendered.

4. The court should have admitted the evidence offered by the defendant, tending to show the disposition made by Bowman of the goods which he purchased from the plaintiff, and of which complete delivery was made to him at the time the judgment was rendered against him, provided the purpose of the evidence was to show that Bowman had disposed of this property after the issuance of the execution against him. If he had disposed of the goods before the execution was issued, and no collusion were proven between him and the plaintiff relating thereto, the evidence would have been immaterial; but if the transfer by Bowman did not occur until afterward, the evidence was material and competent. There are no other points that require discussion.

The judgment is reversed.

Sloss, J., Melvin, J., Henshaw, J., and Angellotti, C. J., concurred.

Rehearing denied.

In denying a rehearing the court in Bank filed the following opinion on January 22, 1918, thereon:

SHAW, J.—In a petition for rehearing, the plaintiff contends that the undertaking sued on is a common-law undertaking, and not an undertaking given pursuant to section 540 of the Code of Civil Procedure. The petition states two grounds for this claim: First, that the language of the undertaking is precisely similar to the undertaking under consideration in *Smith* v. *Fargo*, 57 Cal. 157, which was there held to be good as a common-law undertaking; second, that section 540 of the Code of Civil Procedure does not authorize the sheriff to release the property "unless the defendant give him security by the undertaking of at least two sufficient sureties, in an amount sufficient to satisfy such demand, besides costs, or in an amount equal to the value of the property which has been, or is about to be, attached; in which case, to take such undertaking," and that this means that the undertaking must first be delivered personally to the sheriff, and that no undertaking can be considered as given under its provisions where it is passed directly to the plaintiff.

The first ground is disposed of by the cases cited in the original opinion herein. While the language of the undertaking in *Smith* v. *Fargo* is substantially identical with that of the undertaking in the case at bar, the decision there, holding it good as a common-law undertaking, was not based upon that ground, as will presently be seen.

The second ground was not argued in the briefs. It is true the plaintiff's brief stated that the undertaking was delivered directly to the plaintiff, and that this was an admitted fact in the case, but there is no argument to the effect that the delivery direct to plaintiff had the effect of making it a common-law undertaking rather than one given under the statute. The only argument upon the question was a reference to *Smith* v. *Fargo, supra,* followed by the statement that "in that case the court was considering a bond containing the same language as the bond in the case at bar, and held such a bond to be a common-law bond," and by a citation to · *Kanouse* v. *Brand,* 11 Cal. App. 669, [106 Pac. 120], and *Bailey* v. *Aetna I. Co.,* 5 Cal. App. 740, [91 Pac. 416]. The decision in *Smith* v. *Fargo* was not put upon the ground that the undertaking was delivered directly to the plaintiff. The fact was that after the attachment was levied, the defendant appeared in the action and applied ·to the court for a discharge of the attachment. This he could only do under the provisions of sections 554 and 555, whereby the release could only be obtained by giving an undertaking in a sum to be fixed by the court and for the redelivery of the property or payment of the judgment. Instead of doing this, the defendant gave the undertaking there in question, not for a redelivery, but in the form required for an undertaking under section 540. This court in that case very properly held that the undertaking was not given under section 540, because the defendant was not pursuing the remedy there provided, and that it was not good under section 555 because it did not conform to the proceeding there laid down, but that notwithstanding these facts, a recovery thereon could be sustained on the ground that it was a promise supported by a sufficient consideration to pay the debt due to the plaintiff as ascertained and fixed by the judgment, and that it was therefore good as a common-law undertaking or promise. The decision does not hold, and was not intended to hold, that an undertaking given before the sheriff has returned the writ of attach-

ment, and following the terms required by section 540, is not a good statutory undertaking because of the mere fact that it was delivered directly to the plaintiff instead of being given to the sheriff for the plaintiff. *Kanouse* v. *Brand, supra,* was also entirely different from the present case. There writs of attachment had been levied in two counties and the sheriffs had made returns of the writs. In this situation, the defendant executed directly to the plaintiff the undertaking sued on in the case, and thereupon the plaintiff himself released the attachments. For these reasons it was held that the undertaking was not authorized by either section 540 or sections 554 and 555, but that being given upon a sufficient consideration, the release of the attachment, it was· a good common-law promise and bound the surety to its performance. The Bailey case has no particular application and need not be noticed.

In the present case all that appears is that the undertaking was "executed and delivered" to the plaintiff, and that thereupon the attachment was discharged and the property released. The undertaking is set out in full in the complaint and in the findings. It is entitled in the action and merely promises that if the plaintiff recover judgment, the surety will on demand pay the amount thereof to the plaintiff. It was executed and delivered to the plaintiff only in the sense that it was passed to the plaintiff instead of to the sheriff. It does not appear that the plaintiff himself released the property, but only that upon such delivery the property was released. So far as appears, the delivery to the plaintiff was for convenience only, and the property was released by the sheriff in the usual way, as upon the giving of the undertaking provided in section 540. This being the case, it should be regarded as an undertaking given in pursuance of that section, and as governed, with respect to a suit thereon, by the provisions of section 552. If anything further occurred between the parties at the time of its execution which would operate to change its character in this regard, it can be developed upon another trial. It does not appear from the record before us.

The petition for rehearing is denied.

Richards, J., *pro tem.,* Melvin, J., Victor E. Shaw, J., *pro tem.,* and Wilbur J., concurred.