[Civ. No. 7707. Third Dist. Nov. 17, 1949.]

DeWITT C. STOWE, Appellant, v. E. N. MATSON et al., Respondents.

Mazzera, Snyder & DeMartini for Appellant.

Chas. H. Epperson for Respondents.

THOMPSON, J.—In this suit against the sureties on an undertaking given to release an attachment, under sections 554-555, Code of Civil Procedure, the plaintiff has appealed from a judgment in favor of the defendants, which was rendered on the ground that the attachment was absolutely void and that the bond was therefore executed without consideration, and created no liability against the sureties. This appeal was heard upon a written stipulation of facts.

The original action was a suit between copartners for dissolution of the partnership and for an accounting. The chief question to be determined on this appeal is whether the attachment and bond for release thereof were void *ab initio*, or merely voidable. The pleadings, findings, judgment and entire record disclose the fact that the trial court was without jurisdiction to issue the attachment and that it was therefore unauthorized and absolutely void.

The plaintiff and A. G. Jones were engaged as partners in a manufacturing business in Stockton. Plaintiff brought suit to terminate the copartnership and for an accounting. The complaint was couched in two counts. The second count merely alleges that defendant in that suit, Jones, became indebted to plaintiff for merchandise received and for money due and owing. Nothing is alleged in that count to bring it within the exception to the general rule that one partner may not maintain an action in assumpsit against his copartner for property belonging to the partnership until after the copartnership is dissolved and an accounting is had. Clearly, the second count refers only to partnership property, and not to any claim independent thereof. The affidavit for attachment merely averred that the defendant, Jones, became indebted to plaintiff, without stating which count was relied upon, "for goods, wares and merchandise belonging to the plaintiff and taken and used . . . and for money due and owing from defendant to plaintiff." A bill of particulars, with relation to the second count, was demanded by the defendant and supplied. It definitely shows that all plaintiff claimed in that action was "An undivided one-half interest in the assets of" the copartnership business. The court adopted findings that "defendant has applied monies, receipts, proceeds and has used the assets of said co-partnership business for his own purpose without the permission or consent of plaintiff," and that plaintiff is entitled to receive from the defendant, Jones, $3,879.67, "*which is an amount equal to the value of his interest* in the dissolved co-partnership" business. (Italics

added.) Judgment was rendered accordingly. No findings were adopted nor was judgment rendered on the second count.

In the present action against the sureties on the bond, with all pleadings, proceedings and records of the attachment suit before it, the court adopted findings to the effect that "at no time did any attachment issue based upon plaintiff's cause of action for dissolution of said partnership; that it is true that at no time *was any judgment recovered* by plaintiff on plaintiff's second cause of action against A. G. Jones," and that "said bond to release attachment *was wholly without consideration and void."* It is apparent that if more definite findings had been adopted, they would necessarily have been adverse to the plaintiff. Judgment upon said findings was accordingly rendered that plaintiff take nothing by that action. From that judgment this appeal was perfected.

▆ In a suit for dissolution of partnership and for an accounting, the adding to the complaint of a separate count in assumpsit, without alleging that it is based on claims independent of the interests in the partnership property, where the pleadings and records disclose the fact that the only claims involved are those which affect the partnership property does not change the nature of the action or authorize the issuance of an attachment. (*Stone* v. *Superior Court,* 214 Cal. 272 [4 P.2d 777] ; *San Francisco Iron & Metal Co.* v. *Abraham,* 211 Cal. 552 [296 P. 82] ; *Powers* v. *Freeland,* 114 Cal.App. 146 [299 P. 736].) In the Stone case, *supra,* the court said at page 274:

"The fact that plaintiff's complaint . . . contained two counts and that the second count therein was in the form of a common count for money had and received cannot be held to change the situation or to entitle the plaintiff to the issuance of a writ of attachment in said action, since her cause of action is admittedly the same in each count and is founded upon the facts set forth in detail in the first count of her complaint, from which it clearly appears that her only cause of action is one founded upon defendants' alleged fraud and deceit."

Quoting with approval from the San Francisco Iron & Metal Company case, the court further said in the Stone case:

"The case of *San Francisco Iron & Metal Co.* v. *Abraham et al.,* 211 Cal. 552 [296 P. 82], would seem to be precisely in point as applied to the above situation. The plaintiff's complaint in that action was in two counts. The first count specifically pleaded a cause of action based upon fraud and

deceit. The second count pleaded a cause of action for moneys had and received. The defendants applied for and received an order discharging an attachment which the plaintiff had caused to be issued. The plaintiff appealed from said order, but without avail. This court affirmed said order upon the authority of *Hallidie* v. *Enginger, supra* [175 Cal. 505 (166 P. 1)], and upon the foregoing line of authorities, upon which that decision was based.

"The fact that the plaintiff in the Abraham case did not seek to rescind the contract alleged to have been fraudulently obtained is an immaterial circumstance not affecting the cause of action upon which the plaintiff sought to recover in two counts, but which, as the court aptly pointed out, were but different methods of pleading one transaction."

In the Stone case, the Abraham case and the Powers case, *supra*, under similar circumstances it was held that the mere pleading of an additional common count will not have the effect of changing the principal cause of action to which the second count apparently applies, nor will it authorize the issuance of an attachment which would otherwise be illegal.

The legality of the attachment must be determined from the pleadings, proceedings and entire record in the attachment suit to ascertain therefrom what, in fact, the real grievance is for which relief is sought. As the Supreme Court said in the Abraham case: "The question is not what the plaintiff has pleaded but *what in truth and in fact is its grievance.*" (Italics added.)

We conclude that the addition of count two in the original action did not change the cause of action from a suit for dissolution of partnership and an accounting to one based on contract, and that the second count did not confer jurisdiction on the court to issue the attachment.

The suit for dissolution of partnership and for an accounting did not authorize the issuance of an attachment. In 4 American Jurisprudence, section 105, page 621, which is supported by reputable authorities, it is said:

"An attachment cannot be sued out by one partner against another in a suit involving partnership transactions as to which there has been no settlement and accounting."

A suit for dissolution of partnership and for an accounting is equitable in its nature. A fiduciary relationship exists between the copartners. As is said in the text of 20 California Jurisprudence, section 35, at page 718: "[T]he claim of one partner is, strictly speaking, merely equitable, as it can be

enforced only through an equitable action for an accounting.'' (*Commercial Bank of Los Angeles* v. *Mitchell*, 58 Cal. 42; *Hooper* v. *Barranti*, 81 Cal.App.2d 570, 578 [184 P.2d 688]; 47 C.J. § 250, p. 803.) The authorities appear to be uniform to the effect that one partner may not maintain a suit in assumpsit or at law, for claims growing out of the partnership transactions until after dissolution of the partnership and an accounting has been had. (*Dukes* v. *Kellogg*, 127 Cal. 563 [60 P. 44]; *Cunningham* v. *deMordaigle*, 82 Cal.App.2d 620 [186 P.2d 423]; *Johnstone* v. *Morris*, 210 Cal. 580, 583 [292 P. 970]; *Mosher* v. *Helfend*, 7 Cal.App.2d 48, 51 [44 P.2d 1050]; 20 Cal.Jur. § 70, p. 759; 47 C.J. § 250, p. 802; 40 Am.Jur. § 460, p. 449.) We conclude that the attachment in the action for dissolution of partnership and for an accounting was unauthorized and void *ab initio*. Since the attachment was void, it follows that the undertaking which was executed in lieu of the lien created thereby was without consideration and also void.

 An attachment is an extraordinary and summary proceeding in rem. It is purely statutory. It creates special and conditional liens. (Code Civ. Proc., § 537.) No right or title in the property may be acquired except in strict compliance with the statutes. (*Anaheim National Bank* v. *Kraemer*, 120 Cal.App. 63 [7 P.2d 765]; 7 C.J.S. § 2, p. 186.) The defendant's undertaking given to release the attachment is in lieu of the lien created thereby. (Code Civ. Proc., § 554.) If the attachment is not authorized by statute, the court is without jurisdiction to issue it. An attachment which is issued without jurisdiction or authority of statute is void *ab initio*. When the complaint affirmatively shows that the action is not founded on contract or that the plaintiff is not entitled to an attachment, the court is without authority to issue the writ. An attachment may not issue in an action founded on tort, or in an equitable suit between partners for dissolution of the partnership and an accounting. Where the attachment is void for lack of jurisdiction or statutory authority, the defendant's undertaking given to release the same is likewise void for lack of consideration. When the attachment is absolutely void the sureties on the bond to release it are not estopped from denying their liability thereon in a subsequent suit on the undertaking. It is true that they may be estopped from defending the suit on the ground of mere irregularities in the affidavits for attachment or in the

proceedings. In *Kreider* v. *American Surety Co.*, 6 Cal. App.2d 307 [43 P.2d 831], an order discharging an attachment on the ground that it was unlawfully issued and therefore void was affirmed on appeal. The court said:

"The writ being void, there existed no legal right to the seizure of property thereunder, and the bond given by respondent to stay the execution was without consideration. Appellant was entitled to nothing under the void writ and parted with nothing to which he was entitled when the sheriff released the property."

The case of *Taylor* v. *Exnicious*, 197 Cal. 443 [241 P. 397], was a suit against the sureties on a receiver's bond in a bankruptcy proceeding. The Supreme Court held that there was no authority for the appointment of a receiver at the instance of a stockholder in a suit against the corporation, and that the court exceeded its jurisdiction in appointing the receiver. The court said, "If the order appointing the receiver be void, a material consideration for the execution of the bond has failed, and the surety cannot be held upon it." The court further declared that "The bond is squarely predicated upon and is given in compliance with an order which the court had no jurisdiction to make." The judgment relieving the surety of liability on the bond was affirmed.

In *Benedict* v. *Bray*, 2 Cal. 251 [56 Am.Dec. 332], a judgment in a suit in assumpsit rendered by a magistrate in which an attachment was illegally issued, was reversed on appeal. The Supreme Court said:

"[I]t is certain that they (the sureties) were under no legal liability on this bond. It was inoperative; . . ..

"The bond is the antecedent of the attachment, and accompanies in point of time the affidavit which must be made before the writ is issued. It depends for its legal effect upon the writ. If no writ were issued, such a bond would be null and void. It could have no effect except as connected with the attachment. They exist together. . . .

"The justice in this case had no authority to issue an attachment, or to take such a bond founded upon it. He was, under our statutes, totally without jurisdiction *ratione materiae*. A bond exacted by an officer when he has no authority to require it is void."

In San Francisco Iron & Metal Company case, *supra*, an appeal from an order dissolving an attachment on the ground that the action sounded in tort and that the attachment was unauthorized by law was affirmed. The Supreme Court said:

"The foregoing facts show that the plaintiff's grievance is a tort and under our statute it was not entitled to an attachment. (Code Civ. Proc., sec. 537; *Hallidie* v. *Enginger,* 175 Cal. 505, 509 [166 P. 1].) Moreover searching the entire record nothing appears showing any contract under which the defendant became indebted to the plaintiff '. . . upon a contract express or implied for the direct payment of money.' "

The appellant contends that defendants are estopped in this collateral action from denying liability on the ground that the attachment and bond were void. In support of that contention he relies chiefly on *Koehler* v. *Serr,* 216 Cal. 143 [13 P.2d 673, 89 A.L.R. 262], and *Passow & Sons* v. *United States Fidelity & Guaranty Co.,* 177 Cal. 31 [170 P. 1124]. The Koehler case, *supra,* was a suit against the sureties on an undertaking given for release of an attachment. The defendant contended that the action was founded on alleged tort, and not upon a contract and that the attachment was invalid and the bond for release of the attachment was therefore without consideration and void. Judgment for the plaintiff was affirmed. The court said:

". . . If, on collateral attack, the fact that the affidavit is false as to the unsecured status of the debt is no defense, then the falsity of the affidavit as to the true character of the plaintiff's cause of action as disclosed by the proof can be no defense, *where, as here, the allegations of the complaint and the averments of the affidavit are prima facie sufficient.*" (Italics added.)

Evidently, in that case, both the complaint and affidavits for attachment disclosed the fact that an attachment should lawfully issue. That case clearly distinguished between a case in which the attachment was merely voidable, and one in which it is absolutely void because it is issued contrary to the statute. The court determined that, in a collateral action on the bond, the sureties are estopped from asserting that the attachment was merely *voidable.* On the contrary, it is inferred that the sureties are not so estopped from pleading and proving that the attachment is void *ab initio.* The first syllabus to that case correctly states that conclusion as follows:

"The sureties on a bond given to prevent an attachment cannot merely show that the attachment proceedings were voidable in order to support their contention that they are not liable on the bond, but they must show in a proper proceeding

that the attachment proceedings were void and a nullity in their inception.''

The opinion further states in that regard:

''. . . The defendants may not rest content with the assertion that the attachment proceedings need be shown to be merely voidable in order to support their contention that they are not liable on the bond. The case of *Passow & Sons* v. *United States F. & G. Co., supra,* and cases to like effect, heretofore cited, show the lack of any merit in that contention. Therefore, in order to avoid the application of the rule in those cases the defendants must show in a proper proceeding that the attachment proceedings in the case of *Koehler* v. *Leonards & Company* were void and a nullity from their inception. (See *Mudge* v. *Steinhart,* 78 Cal. 34 [12 Am.St.Rep. 17, 20 P. 147].)''

In the Mudge case, to which the Supreme Court referred with approval regarding the distinction between a void and a voidable attachment, the latter of which, only, will estop the sureties in a collateral suit from denying their liability, it was determined that ''the writ of attachment issued therein was absolutely void, and cannot be invoked to uphold the jurisdiction of the court.'' In that case the complaint in the attachment suit alleged that the defendant obtained plaintiff's property by means of fraud, which was equitable in its nature, and not based on contract, just as it was in the present case. That case also was a collateral attack upon the attachment in a subsequent suit upon the bond. The court said:

''This may be regarded as a collateral attack, which can only be sustained for causes which render the writ absolutely void, and not merely voidable. (*Pennoyer* v. *Neff*, 95 U.S. 714 [24 L.Ed. 565].)

. . . . . . . . .

''The existence of a contract, express or implied, is an essential basis without which no writ of attachment can properly issue, and as in this case the action was founded, not upon contract, but upon the fraud and wrongful acts of the defendant, we are of the opinion the writ of attachment issued therein was absolutely void, and cannot be invoked to uphold the jurisdiction of the court.''

Applying that principle to the present case, it follows that since this was a suit for dissolution of a copartnership and for an accounting of the partnership business, which is strictly equitable, and in which a partner is not permitted to sue his copartner at law or in assumpsit for obligations growing out

of the partnership affairs, until after the partnership has been terminated and the accounting had, the sureties are not estopped from showing that the attachment was totally void for lack of jurisdiction or statutory authority and that the bond therefore created no liability against them. In this case the pleadings, proceedings and entire record conclusively show, as the trial court definitely found, that the attachment and undertaking were "wholly without consideration and void."

Regarding the right to collaterally attack the validity of an attachment, the United States Supreme Court said in *Pennoyer* v. *Neff*, 95 U.S. 714 [24 L.Ed. 565, at p. 570], that unless that were permitted,

"Judgments for all sorts of claims upon contracts and for torts, real or pretended, would be thus obtained, under which property would be seized, when the evidence of the transactions upon which they were founded, if they ever had any existence, had perished."

Likewise, in *Pacific National Bank of Boston* v. *Mixter*, 124 U.S. 721 [8 S.Ct. 721, 31 L.Ed. 567], the United States Supreme Court held that the sureties on an attachment bond were entitled to attack the validity of the attachment, upon which the suit on the bond is founded, by showing that it was absolutely void. In that case the court clearly distinguished between a void attachment based upon pleadings and a record which gave the court no jurisdiction or authority to issue the writ, and one in which the attachment was *merely voidable for irregularities*. The court said, at page 728:

"It is undoubtedly true that the sureties on a bond of this kind are estopped from setting up, as a defense to an action for a breach of its condition, any irregularities in the form of proceeding to obtain an attachment authorized by law which would warrant its discharge upon a proper application made therefor. As the purpose of the bond is to dissolve an attachment, its due execution implies a waiver both by the defendant and his sureties of all mere irregularities. . . .

"In the present case, however, the question is whether the bond creates a liability when the attachment on which it is predicated was actually prohibited by law. In other words, whether an illegal and therefore a void attachment is sufficient to lay the foundation for a valid bond to secure its formal dissolution. The bond is a substitute for the attachment, although not affected by all the contingencies which might have discharged the attachment itself. (Citing authorities.) Such

being the case, it necessarily follows that if there was no authority in law for the attachment, there could be none for taking the bond. If the attachment itself is illegal and therefore void, so also must be the bond which takes its place. Objections can be made to an attachment issued on proper legal authority, which cannot be used as a defense to a bond taken under the statute for its dissolution; but if there can be no lawful attachment, there can be no valid bond for its dissolution.''

We conclude that the attachment which was issued in this case was absolutely void, and not merely voidable, and that the undertaking which was executed for its release was without consideration and therefore also void.

The judgment is affirmed.

Adams, P. J., and Peek, J., concurred.

A petition for a rehearing was denied December 16, 1949, and appellant's petition for a hearing by the Supreme Court was denied January 12, 1950. Edmonds, J., and Carter, J., voted for a hearing.